Richard M. Trautwein, Rubin & Trautwein, Louisville, for appellant.

Winfrey P. Blackburn, Jr., Stites & McElwain, Louisville, for appellee.

**Harriet J. HANLON, Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, Appellee.**

Court of Appeals of Kentucky.

June 29, 1973.

HATCHER, Special Commissioner.

This appeal involves the construction of a group life insurance policy carried by Fawcett-Haynes Printing Company on its employees. Appellant, Harriet Hanlon, is the surviving widow of John Hanlon, a former employee of Fawcett-Haynes, who died on January 10, 1970. The issue involved is whether or not Aetna's policy covered John at the time of his death.

Fawcett had carried the life coverage policy with Aetna on its employees since 1938. Prior to his death, John had been an employee for some ten years. On November 22, 1969, John was interviewed by an employer in Ohio and had decided to terminate his employment with Fawcett and work for the Ohio firm. On November 23,

1969, while engaged in his occupation for Fawcett, John received an injury to his hand which disabled him from work until December 15, 1969. On November 24, 1969, and while incapacitated from work due to the injury, John notified Fawcett that he would terminate his employment with it on November 28, 1969. On December 15, 1969, when John recovered from his injuries sufficiently to return to work, he did, in fact, begin his new employment in Ohio. On January 10, 1970, he died.

Aetna collected monthly premiums from Fawcett for its group policy. Fawcett would submit a payroll report based on the first of the month. On the first of the next succeeding month Aetna would determine the premium for the ensuing month based on the payroll report given for the preceding month. As applied to this case, Fawcett sent Aetna a payroll report on or about November 1, 1969. Using this report as a basis, Aetna billed Fawcett on December 1, 1969, for the insurance coverage on its employees for the month of December. Fawcett likewise sent a payroll report on December 1, 1969, and Aetna billed Fawcett on January 1, 1970, based on that report, for the January 1970 premium. John's salary was included in the payroll record submitted November 1, 1969, which was the basis for the December 1 premium. John's salary was not included in the December 1 payroll report which was the basis for the January 1 premium charge.

If John was covered by the group policy with Aetna at the time of his death, the appellant, as beneficiary, would be entitled to $13,000.00. The relevant policy provision provides as follows:

"Insurance of any employee will automatically cease thirty-one days after termination of employment, except as hereinafter provided. Cessation of active work by an employee shall be deemed termination of employment; except that if an employee is absent on account of sickness or injury, or is temporarily laid off, granted leave of absence, pensioned or retired, employment shall be deemed to terminate when premium payments for such employee's insurance are discontinued."

Appellant contends that since John was absent from work on account of sickness that his employment did not terminate until December 15, 1969, and, for that reason, the insurance coverage on him would not cease until January 31, 1970, which was thirty-one days after insurance premium for him was discontinued. On the other hand, appellee contends that the resignation from employment by John was effective November 28, 1969, and accordingly insurance coverage terminated December 29, 1969, twelve days prior to his death, and that his termination of employment was not caused by sickness, but by voluntary resignation.

The facts of this case are not in dispute and the construction of the group policy, as applicable to the facts, becomes one of law. The trial court entered summary judgment for the appellee.

The Supreme Court of Michigan had before it an almost identical question in the case of Hawthorne v. Metropolitan Life Ins. Co., 285 Mich. 329, 280 N.W. 777, the only distinction being that in the Hawthorne case the employee was discharged instead of resigning. In that case the employee, while sick, was discharged by his employer. More than thirty-one days thereafter, but less than thirty-one days after the cessation of the payment of premiums on him, the employee died. In a group policy containing substantially the same provisions as the one quoted above, the Michigan court held that coverage terminated thirty-one days after the employee's discharge.

In the instant case the court is of the opinion that irrespective of sickness or injury, if the employee resigned, then under the terms of the group policy carried by Fawcett coverage terminated thirty-one days thereafter. The provision extending insurance coverage in case of injury quali-

fied the term "cessation of active work," which was a status requiring some explanation. On the other hand, resignation from employment, as in the instant case, did not require explanation or qualification, but absolutely terminated coverage thirty-one days thereafter. John Hancock Mutual Insurance Company of Boston v. Cooper, Ky., 239 S.W.2d 989, and Hawthorne v. Metropolitan Life Insurance Company, 1938, 285 Mich. 329, 280 N.W. 777.

Accordingly, when John Hanlon resigned from his employment, his insurance coverage with Aetna terminated thirty-one days thereafter, irrespective of the fact that he may have been disabled by injury at the time of his resignation.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.