Brown, Appellant, *v.* Carnegie-Illinois Steel Corp.

Argued November 24, 1950. Before HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (RHODES, P. J. absent).

*Samuel J. Goldstein,* for appellant.

*P. K. Motheral,* with him *Reed, Smith, Shaw & Mc-Clay,* for Carnegie-Illinois Steel Corporation, appellee.

*Thomas Lewis Jones,* for The Equitable Life Assurance Society of the United States, appellee.

OPINION BY HIRT, J., January 12, 1951:

The Equitable Life Assurance Society issued a group insurance policy to United States Steel Corporation which inured to the benefit of such of its employes and those of its subsidiaries as elected to benefit by its provisions. On January 24, 1940, plaintiff, an employe of Carnegie-Illinois Steel Corporation, applied for and received insurance under the contributory group life insurance plan of the policy, in the sum of $2,000 and agreed to pay the monthly premiums chargeable to him for the coverage. The amount of the insurance was later increased to $2,500. His interest in the group insurance was evidenced by an individual certificate, issued to him, wholly in accordance with the terms of the master policy. In this action in equity plaintiff sought to restrain the insurer permanently from terminating his beneficial interest in the group insurance. As prayed for in the bill an injunction, preliminary until hearing, was entered by the court on March 18, 1949, enjoining the defendants from canceling plaintiff's coverage in the group policy. After final hearing however the court in banc affirmed the chancellor's findings of fact and conclusions of law and dismissed plaintiff's bill. The decree must be affirmed.

Plaintiff's employment with Carnegie-Illinois began in January 1940 and continued until March 10, 1947 when he ceased active work because of disability from pulmonary tuberculosis. He has been totally disabled since that date. After ceasing the work of his employ-

ment claimant nevertheless continued to pay his employer the monthly premiums, as theretofore, in an effort to keep his insurance in force. The employer accepted these payments and continued to carry claimant on its records as an employe for nearly two years, and until February 7, 1949. On that date Carnegie-Illinois notified plaintiff that his nominal status as an employe of that company would end on March 10, 1949 because of absence for more than two years from date last worked due to disability and that his insurance under the certificate issued to him by Equitable under the group policy would terminate 31 days thereafter on April 10, 1949. It is the contention of this claimant-appellant that his insurance is still in force for the reason alleged that the insurer was without authority under the group policy to terminate his insurance during the period of his disability from illness.

Every intendment of the policy, as evidenced by its terms, refutes this contention of appellant. The obvious primary purpose of this type of insurance is to supply low cost insurance for the protection of workmen while actually employed. To overburden the obligation of the insurer with risks such as urged by appellant would tend to defeat that end. Since the hiring of appellant was not for a definite term his tenure of employment was at will and therefore terminable at any time by either party. *Trainer v. Laird et al.,* 320 Pa. 414, 183 A. 40. Carnegie-Illinois had the right to terminate appellant's status as an employe as it did and thereupon his rights as an insured were determined not by his employer but by the fixed terms of his insurance contract.

In group life insurance policies the insurer and the employer are the primary contracting parties and an insured employe has no greater rights than those provided in the policy. *Peyton v. Equit. Life Assur. Soc.,* 159 Pa. Superior Ct. 318, 48 A. 2d 145. By the clear terms of the group policy and appellant's individual

certificate thereunder, which must be given effect (*Lyford v. Insurance Co.*, 122 Pa. Superior Ct. 16, 184 A. 469) appellant's insurance lapsed on April 10, 1949. The group policy, constituting the master contract, in an applicable amendment, provided: "The insurance of any employee shall *automatically* cease upon the occurrence of any of the following events: (a) the termination of this policy, (b) the cessation of premium payments on account of such employee's insurance hereunder, (c) the thirty-first day following the termination of his employment in the classes of employees insured hereunder. Cessation of active work by an employee shall be deemed to constitute the termination of his employment except that, an employee absent from work because of disability due to injury or sickness or on account of lay-off or leave of absence, will, subject to the continuance of premium payments on account of such employee's insurance, be regarded as still in the employment of the Employer during the period of such disability, lay-off or leave of absence *until the effective date of the discontinuance of such employee's insurance as entered on the Employer's records* . . . At the end of the respective periods mentioned above or *upon the effective date of the discontinuance of the employee's insurance as entered on the Employer's records,* as provided above, the employee's insurance hereunder shall terminate automatically unless he shall have returned to active work." (Italics supplied.) The contract provides that the insurance coverage is terminated 31 days after cessation of work by an employe, subject to certain exceptions which are entirely for his benefit. The policy is silent on the subject of permanent disability but does provide that an employe absent from work because of disability due to injury or sickness will still be regarded as an employe. We agree with appellee that the intent of that provision is to protect the employe in case of temporary illness

or injury but not to continue his status as an employe, when permanently disabled, until his death. The termination of that status on the books of the employer terminates the interest of the former employe in the group insurance.

In the present case the employer, although not obliged to do so, carried this permanently disabled claimant on its records as an employe for nearly two years after he had ceased active work, and his insurance coverage continued during that period. But it ended under the clear language of the master policy thirty-one days after termination of his employment on March 10, 1949, except for the Extended Death Benefits Clause of the insurance contract with which we are not here concerned.

At the time Carnegie-Illinois gave plaintiff notice of such termination of employment it specifically notified him that under his contract he had the "privilege of converting" his "group insurance into an individual policy of life insurance" within a period ending April 10, 1949. He was also reminded that no medical examination would be necessary and he was advised how to proceed to so convert his insurance. Unfortunately he did not avail himself of the privilege.

Decree affirmed at the costs of appellees.