ARTHUR KOCH, PLAINTIFF-APPELLANT, v. METROPOLI-
TAN LIFE INSURANCE COMPANY, DEFENDANT-RE-
SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 11, 1978—Decided October 3, 1978.

Before Judges CONFORD, PRESSLER and KING.

*Mr. Richard H. Thiele, Jr.* argued the cause for appellant (*Messrs. Wharton, Stewart and Davis,* attorneys).

*Mr. Richard G. Mandel* argued the cause for respondent.

The opinion of the court was delivered by

CONFORD, P. J. A. D. This is an action to recover the amount of medical expenses incurred by plaintiff because of an accident to his wife asserted to be due from defendant insurer on a group medical insurance policy issued by defendant to plaintiff's former employer, Geerlings Greenhouses ("Geerlings"). Defendant denied liability and filed a counterclaim for recovery of payments previously made by it to plaintiff in respect of earlier expenses incurred by him arising out of the same accident and alleged not to have been due and to have been paid by mistake.

Plaintiff's employment was terminated by Geerlings September 17, 1974. The parties dispute the reason for the termination, plaintiff claiming it was because he was unable to work consequent upon an injury at work in July 1974 and defendant that it was for failure to report to work, for continued absence and for drunkenness. No proofs were taken on the issue at trial, but for purposes of this appeal we

assume plaintiff's hypothesis of discharge on account of illness.[1]

Shortly after his discharge plaintiff obtained other employment, and soon after, on October 19, 1974, plaintiff's wife suffered serious injuries to her arm. As the group policy covered dependents of employees plaintiff filed a claim for the ensuing medical expenses which resulted in the payment by defendant which is the subject of the counterclaim. Defendant contends the coverage terminated absolutely with the discharge of plaintiff on September 17, 1974 and that its payment of the initial expense claim was under a mistake of fact, the computer not having yet recorded plaintiff's termination. Geerlings included plaintiff in its premium payments for the month of October 1974 but expressly excluded plaintiff on the reporting form for the November payment.

The following provisions of the group policy are determinative of the question of coverage of plaintiff's claim.

Section 4. CESSATION OF INSURANCE. — All insurance hereunder shall automatically cease upon the discontinuance of this Policy and an Employee's insurance shall cease prior thereto in accordance with the provisions pertaining to cessation of insurance specified in the applicable Exhibit.

Section D
CESSATION OF INSURANCE

1. The * * * Insurance shall automatically cease on the last day of the calendar month in which termination of the Employee's employment occurs. For the purposes of the * * * Insurance, termination of employment means cessation of active work as an Employee as defined in the Group Policy, except that in circumstances specified in the Group Policy the Employer may deem the Employee's employment to continue after such cessation, subject to the terms of the Group Policy.

Section 4A. CONTINUATION OF INSURANCE DURING ABSENCE FROM ACTIVE WORK. — In the case of absence of an Employee from active work because of sickness, injury, leave of ab-

---

[1] In an opinion denying rehearing the trial court purported to find that the discharge was because of illness. He had no right to do so, as the fact was contested and no proofs were taken.

sence, or lay-off, the Employer may deem an Employee's employment to continue for the purposes of the insurance provided hereunder but, in the case of leave of absence or lay-off, in no event beyond the end of the third calendar month (second calendar month in the case of leave of absence because of military service) following the month in which such leave of absence or lay-off commenced.

When an Employee is absent from active work and his employment is deemed to continue until terminated by the Employer or by an act of the Employee, employment shall be considered terminated, if the Employer notifies the Insurance Company that the Employee is not to be included as an insured Employee, or if the Employer discontinues premium payment on account of such Employee.

The trial court, on a stipulation of the facts recited above and the policy provisions, held that the coverage as to plaintiff expired prior to the occurrence of the accident on October 19, 1974 because of the previous termination of the plaintiff's employment and that plaintiff could not rely on the provisions of section 4A for continuation of the insurance in certain contingencies as they were not applicable after an absolute termination of employment but only when there was "temporary absence from active work" in any of the specified contingencies. It consequently entered judgment for defendant both as to plaintiff's claim and defendant's counterclaim.

We find ourselves in agreement with the judgment under appeal.

Plaintiff's position is based squarely on the language of section 4A, asserting that since he had been discharged because of illness, he must be considered to have been "absent" from "active work because of sickness [or] injury" within the intent of the section, thereby authorizing his employer to continue his employment "for the purposes of the insurance" thereafter. Since the employer did evidence intention for continuance as to plaintiff for the month of October 1974 the accident to his wife during that month is therefore covered. It will be noted that under plaintiff's construction of the policy, he and his dependents would be covered indefinitely if the illness by reason of which he was discharged

continued indefinitely, even until death, as the section creates no time limitations for coverage for absence due to sickness or injury, but only for absence for leave of absence or lay-off.

■ Our study of this policy, particularly in the light of practically unanimous judicial construction of the intent of similar provisions in group insurance policies over a period of decades, satisfies us that section 4A of the policy is not intended to apply to any case where the separation of the affected employee from the employment was permanent but only where it was temporary. The employee himself is not intended to have any absolute right to continued coverage where he ceases active work,[2] but the employer is given the option of beneficent treatment of an employee by continuance of the insurance thereafter while and during the period when the employment has merely been suspended temporarily as opposed to permanent termination. See Annotation, 68 *A. L. R.* 2d 8, 72, 74 (1959). Permanent termination of the employment almost invariably terminates coverage either at once or within specified time periods thereafter. *Ibid.*

■ Notwithstanding settled judicial policy for construing ambiguous insurance provisions in favor of insureds there can be no fair doubt as to the meaning of the provision of the instant policy relied upon by plaintiff. The sense of section 4A is best discerned by considering it as an entirety. The clause is operative upon "absence * * * from active work because of sickness, injury, leave of absence or lay-off." An employee is not sensibly referred to as "absent" from work

---

[2] In *John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Bennett,* 255 *F.* 2d 745, 748 (4 Cir. 1958), involving a similar group policy, the term "ceases active work" was construed to signify that the insurer intended that ordinarily coverage as to an employee should end when he is relieved of his duties and not await the later date when the paper work of the employer for various purposes in connection with the termination of the employment is completed.

because of illness when he has been discharged outright, even if the occasion for the discharge is illness or injury. Absence, in ordinary parlance, connotes a state of being away from where one ordinarily attends or is expected. See *Webster's Third New International Dictionary* 6 (1971). That meaning obviously is inapplicable to a former employee who has been permanently terminated. The character of the contingencies of absence because of sickness and injury gain confirmatory color by their collocation in section 4A along with "leave of absence" and "lay-off" which are obviously terms indicative of a temporary rather than a permanent nature in ordinary acceptation. Thus the section as a whole is plainly expressive of an intent to give the employer the qualified option to continue the employee's coverage despite a cessation of active work, so long as the employment relationship continues, during absence for any of the four stated contingencies (subject to the time limitation specified as to leave of absence or lay-off).

Section 4A of the instant policy falls within a type of "employer's election," of variable wording, commonly found in group policies, and described as follows in the annotation cited above:

The wording of special provisions giving the employer an election as to the effect of a temporary interruption of the employee's work is far from uniform. Basically, these provisions fall into one of two categories. Either they provide that the employment shall be considered terminated within the meaning of the "termination of employment" clause in the group policy, unless the employer should elect to consider the employment as continuing, or they provide that the employment shall be considered as continuing during the temporary interruption from work, unless the employer chooses to terminate it. Regardless of the exact wording, all these special provisions have one thing in common: they all give the employer the power — usually within certain limits as to time — to declare whether a temporary interruption from work, such as a lay-off, leave of absence, or absence caused by sickness or accident, shall be considered a termination of employment within the meaning of a "termination of employment" clause.

[68 *A. L. R.* 2d, *op. cit. supra* at 72]

While many election provisions of this kind use the word "temporary" in relation to the word "lay-off," and it is used more infrequently as to other of the stated contingencies, some such provisions are entirely devoid of the adjective "temporary" and are nevertheless uniformly construed as though the word were there. See, *e.g., Metropolitan Life Ins. Co. v. Russell,* 70 *S. W.* 2d 656 (Tex. Civ. App. 1934) ; *Hanaieff v. Equitable Life Assur. Soc.,* 371 *Pa.* 560, 92 *A.* 2d 202 (Sup. Ct. 1952) ; *Brown v. Carnegie-Illinois Steel Corp.,* 168 *Pa. Super.* 380, 77 *A.* 2d 655 (Super. Ct. 1951), aff'd o.b. 368 *Pa.* 166, 81 *A.* 2d 562 (Sup. Ct. 1951) ; 68 *A. L. R.* 2d, *op. cit. supra* at 72–74. The cited annotation goes on to say:

> The right of the employer under a special policy provision to decide, in effect, whether a temporary disability, layoff, or leave of absence constitutes a termination of employment within the meaning of the "termination of employment" clause is, for all practical purposes, a modification of the general principle, otherwise applicable, that the insurance coverage ceases with whatever the courts consider a termination of employment. The effect of introducing this modification is to shift the inquiry from a determination of whether the employee has ceased work to a determination of whether the employer's intention, as evidenced by his acts and the attendant circumstances, was to treat the interruption of the employee's work as temporary or permanent.

There is no New Jersey case bearing on the merit of the contention here advanced by plaintiff. *Cf. Keane v. Aetna Life Ins. Co., Hartford, Conn.,* 22 *N. J. Super.* 296 (App. Div. 1952) ; *Ambrose v. Metropolitan Life Ins. Co.,* 18 *N. J. Misc.* 42 (Sup. Ct. 1939). But decisions elsewhere dealing with comparable group policies are clearly against plaintiff's position.

In *Hawthorne v. Metropolitan Life Ins. Co.,* 285 *Mich.* 329, 280 *N. W.* 777 (Sup. Ct. 1938), the employee was insured under a group life policy containing an extension provision similar to the one herein, permitting coverage during an "absence" due to sickness or injury, retirement,

leave of absence or temporary lay-off. He was permanently discharged on August 10 and died on September 28, beyond the 31–day period after which his insurance automatically expired because of his discharge. Like plaintiff herein, the employee's beneficiary argued that because decedent was sick when terminated, his coverage should have been deemed to continue. Unlike the instant case, however, in *Hawthorne* the employer did not pay the employee's premium after his termination. But the court rested on the broad principle that, regardless of the reason for discharge or the conduct of the employer, the insurance company could not be liable once the employee's separation was permanent. It adopted the following reasoning of a commentator:

> Most group policies provide that the insurance on any employee may be continued at the employer's option during a temporary lay-off, temporary disability, or leave of absence. This is a right accorded to, or reserved by, the employer, and constitutes an exception to the general provision that the insurance shall cease with the termination of employment. * * * Although the employer has the right to treat an employee who has been temporarily laid off as still in its employ for the purpose of continuing his insurance, the employer has no right to continue such insurance if the employee was permanently discharged, and if it does so the insurer will not be liable under its contract. Crawford, Group Ins. § 34. [280 *N. W.* at 779–780]

Adding that it would subvert the purpose of group insurance to extend coverage to those who are no longer employees, the court held that plaintiff's beneficiary could not recover. 280 *N. W.* at 780.

In his reply brief plaintiff attempts to avoid *Hawthorne* by noting that the employer therein did not intend to continue coverage, as did plaintiff's employer. But the point of *Hawthorne* and authority to be discussed below is that the employer's intent is ineffective to continue insurance which has already ended by the terms of the policy.

In *Brown v. Carnegie-Illinois Steel Corp.*, 168 *Pa. Super.* 380, 77 *A.* 2d 655 (Super. Ct. 1951), aff'd o.b. 368 *Pa.* 166,

81 *A.* 2d 562 (Sup. Ct. 1951), the employee stopped working due to tuberculosis in 1947, but his employer kept him on the employee rolls and paid his group insurance premiums until 1949, when the employer terminated him as an employee because of his prolonged absence. At the same time the employer ceased making premium payments on the employee's behalf. The employee sought to enjoin termination of insurance coverage on the ground that it must continue during his disability. The terms of the policy were similar to those herein, permitting an extension during "absence" due to illness, etc. The court rejected the employee's theory as follows:

The obvious primary purpose of this type of insurance is to supply low cost insurance for the protection of workmen while actually employed. To overburden the obligation of the insurer with risks such as urged by appellant would tend to defeat that end. * * *

In group life insurance policies the insurer and the employer are the primary contracting parties and an insured employe has no greater rights than those provided in the policy. * * * We agree with appellee that the intent of that provision is to protect the employe in case of temporary illness or injury but not to continue his status as an employe, when permanently disabled, until his death. The termination of that status on the books of the employer terminates the interest of the former employe in the group insurance. [77 *A.* 2d at 656–657]

While plaintiff herein does not seek an indefinite extension, the logic of his position, as already noted, would compel such a result under the policy language. In any event, the underlying basis of the *Brown* case — that coverage cannot continue for one who is not an employee — applies to defeat plaintiff's claim that the employer's conduct can avoid the plain terms of the policy.

In general accord with the principles enumerated in the *Hawthorne* and *Brown* cases, *supra*: *Hanlon v. Aetna Life Ins. Co.*, 497 *S. W.* 2d 722 (Ky. Ct. App. 1973); *John Hancock Mut. Life Ins. Co. of Boston, Mass., supra* (255 *F.* 2d 745); and see *Geist v. National Bellas Hess, Inc.*, 241 *F. Supp.* 209, 212 (D. C. E. D. N. Y. 1965).

■ The fact that Geerlings paid a premium for plaintiff's insurance for October 1974 which was accepted inadvertently and without knowledge by defendant of the termination of employment cannot avail plaintiff to create coverage as against defendant when coverage had ceased under the clear terms of the policy. 19 *Couch on Insurance* 2d, § 82:103 at 1056 (1968); *Mutual Life Ins. Co. of N. Y. v. Presbyterian Hosp. of Dallas,* 503 *S. W.* 2d 870, 874 (Tex. Ct. App. 1973); *John Hancock Mut. Life Ins. Co. of Boston v. Cooper,* 239 *S. W.* 2d 989, 990 (Ky. Ct. App. 1951).

■ The instant policy calling for termination of individual coverage at the end of the month in which there is a cessation of active work as an employee, which in this case meant the month of September 1974, and no other provision of the policy being operative to extend coverage beyond that date, there was no coverage for the accident which befell plaintiff's wife on October 19, 1974.

Plaintiff does not contend that even if there was no coverage he has a defense against the counterclaim.

Judgment affirmed; no costs.