461 A.2d 283

Frances M. ZERANCE, Guardian of the Estate of Nicholas A. Zerance, Incompetent

v.

GUARDIAN LIFE INSURANCE COMPANY OF AMERICA and Carl J. Berst, T/D/B/A Middletown East End Warehouse Company.

Superior Court of Pennsylvania.

Argued Jan. 27, 1983.

Filed June 3, 1983.

Petition for Allowance of Appeal Granted Oct. 4, 1983.

C. Kent Price, Harrisburg, for appellant.

Robert P. Reed, Harrisburg, for appellees.

Before WICKERSHAM, CIRILLO and WATKINS, JJ.

CIRILLO, Judge:

This is an appeal from the Order of the Court of Common Pleas of Dauphin County, dated November 5, 1981. The appellant, Frances M. Zerance, as guardian of the estate of her husband, Nicholas A. Zerance, an incompetent, initiated this action in assumpsit by requesting declaratory judgment. She asked the court to determine the propriety of the termination of her husband's insurance benefits by the appellee, Guardian Life Insurance Company of American (hereinafter "Guardian Life") and Carl J. Berst, t/d/b/a Middletown East End Warehouse Company (hereinafter "Warehouse"). Evidence was received by the court, and thus procedurally the proceeding was treated as a non-jury civil action. A verdict was entered in favor of the appellee

and Warehouse on November 13, 1980.[1] Exceptions were filed, denied, and dismissed, and judgment was entered in favor of appellee. This appeal followed.

The facts are not in dispute. Effective December 27, 1973, Guardian Life issued a group policy of life and disability insurance covering the employees of Warehouse. Appellant's incompetent husband, Nicholas A. Zerance, was at that time an employee of Warehouse. In 1974, while the policy was in effect, Nicholas Zerance became totally and permanently disabled as a result of a surgical operation.[2] Appellant was subsequently informed by letter dated June 26, 1974, which was prepared by an employee of Warehouse pursuant to information supplied by Guardian Life, that Guardian would cover several items of medical care for her husband and that this coverage would continue until the two hundred fifty thousand dollar ($250,000.00) major medical allowance was exhausted. Benefits, which had commenced immediately, were paid yearly while the appellant's employer, Warehouse, kept the subject group policy in effect. Subsequently, on November 30, 1978, Warehouse cancelled the group policy with Guardian Life effective December 1, 1978. The appellant was notified of the cancellation and was also informed that pursuant to the termination clause in the policy, benefits would be extended until December 31, 1979. Total benefits paid by Guardian Life for appellant's husband were approximately fifty-five thousand dollars ($55,000.00).

The facts of this case present a situation not often addressed by the courts in Pennsylvania. The cases that have addressed similar situations involve policy changes made after liability has occurred. *Becker v. Berlin Beneficial Society*, 144 Pa. 232, 22 A. 699 (1891) (beneficial society already paying benefits, may not reduce payments by subsequent amendment); *Marshall v. Pilots Association*, 206

1. Appellant elected to abandon any claim against Warehouse, and its liability was not pursued in appellant's brief or argument on exceptions.

2. Appellant's husband was declared incompetent on April 15, 1975.

Pa. 182, 55 A. 916 (1903) (disabled member not bound by subsequently amended by-law) or situations where group life insurance policies were canceled prior to the deaths of the beneficiaries. *Miller v. Travelers Insurance Co.,* 143 Pa.Super. 270, 17 A.2d 907 (1941); *Brown v. Carnegie-Illinois,* 168 Pa.Super. 380, 77 A.2d 655 (1951). The case at bar presents a slightly different set of facts. In *Miller* and *Brown,* which were cited by the appellee, the employees' life insurance policies were cancelled. This court held, that the employer was entitled to cancel these policies, because the insureds were properly notified and had not pursued their conversion privilege within the stipulated succeeding period. Accordingly, the court denied recovery to the beneficiaries, who sought death benefits when the former insureds died after cancellation of the policies.

The case at bar presents a rather different situation. In *Miller* and *Brown,* the benefit was a life insurance *death* benefit. The right to receive this benefit did not exist until the deaths of the insureds. These individuals did not die until after the termination of their policies, which in turn extinguished their *prospective* right to the benefit. In addition, both of the cancelled policies contained a conversion privilege, which neither of the insureds exercised. In the instant matter, the appellant's incompetent became disabled and therefore entitled to disability benefits long before the termination of the policy. Also, the policy specifically states that there is no conversion privilege "in the event of termination of the Group Policy".

Appellant contends that the right of her husband to receive benefits fully vested at the time of disability, and as such, cannot be divested by subsequent termination of the policy.[3] This contention is supported by two well respected treatises on the law of insurance. "The rights of the insured, where disability occurs prior to the lapse of the policy, are considered vested or fixed, so that recovery can

3. Appellant raises two other issues on appeal, but because of our determination of this first claim we will not reach the merits of these.

be had" Appleman, *Insurance Law and Practice*, § 644, page 222.

> Since rights vest upon loss, a cancellation of the policy cannot destroy liability which has already attached for prior disability or death. A certificate issued under a master group policy providing for disability payments or death payments is not avoided by a cancellation of the policy by the employer where a compensable disability has occurred prior to such cancellation, ...

19 *Couch on Insurance 2d*, § 82:121, page 1067.

Appellant cites *Turley v. John Hancock Mutual Insurance Co.*, 315 Pa. 245, 173 A. 163 (1934), in support of this very premise. In that case, appellant's decedent belonged to an association which had taken out a group life insurance policy with an individual limit of $1,000.00. The proposed insurance "Plan of Protection" issued to the employees guaranteed full payment of the benefit upon the death of the insured if he became totally and permanently disabled after reaching the age of sixty. The certificate of insurance sent to the decedent had an additional proviso that the insurance would terminate when the insured ceased to be a member of the association, unless an election was made to continue the coverage pursuant to a conversion privilege. After age sixty, the decedent became totally and permanently disabled by heart disease and was later forced to quit work. Later, the association refused to accept further dues and notified him that he was "discharged". Upon his death the insurance company refused to pay his widow, the named beneficiary, the $1,000.00. Both the Superior and Supreme Courts affirmed the decision in favor of the widow.

In the instant matter, Judge Lipsett, in his well reasoned opinion did an extensive analysis of *Turley*, and concluded that the rationale behind the Courts' decisions was the fact that the certificate, which the decedent had received, included an additional factor, which had not been in the original "Plan of Protection". Accordingly, he cited the following from the Superior Court opinion:

To construe this policy as contended for by appellants would be to permit the insurance company to have perpetrated a legal fraud upon this deceased and his beneficiary. For an insurance company to issue a circular in which certain insurance benefits are definitely provided for and then to issue a certificate not in accordance with the plan and proposal offered would be such a misrepresentation as in good faith should not be permitted.

Under the terms of the pamphlet *when the disability occurred after 60 years of age, the policy became vested*, its payment being merely delayed until the death of the insured. It is a rather unusual clause, yet it is the one to which the insurance company and the association agreed. The payment of premiums by the insured and their acceptance by the defendants for a period of ten months after the happening of the total disability is a strong confirmation of the fact that defendants themselves believed this insurance policy was still operative. However, under our view of this insurance contract, *upon the happening of the total and permanent disability after the insured had reached the age of 60 years, the face of the policy became vested in the beneficiary* and its payment merely delayed until the death of the insured. 110 Pa.Superior Ct. 578 at 588–89, 168 A. 356 at 360. (emphasis supplied).

Judge Lipsett correctly points out that there is no issue of misrepresentation in the appellant's case. He then goes on to quote the following from the Supreme Court opinion in *Turley,* in which the Court responded to the insurer's argument that separation from employment for any reason extinguished Turley's rights under the insurance contract:

... Undoubtedly this contention would be sound *had not a member's substantive right prior thereto become fixed.* Turley became totally and permanently disabled when he was a member of the association and an employee of the company. He was unable to continue his employment. When that condition arose he became entitled to the benefit from the insurance to be paid to his

beneficiary at death. *His rights became vested.* True, the benefit was not to be enjoyed until death, but his beneficiary was then to receive it. *Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest ....*

315 Pa. at 249–50, 173 A. 163 at 165 (emphasis supplied).

The discrepancy between the "Plan of Protection" and the certificate issued to the decedent may have been a factor in the Superior Court decision, but it is clear from the language in that opinion and the broader language of the Supreme Court, that the primary basis for the decisions was the concept that the insured's rights had vested.[4]

Cases in other jurisdictions have also adhered to this approach. In *Pete v. Metropolitan Life Insurance Co.,* 171 So. 868 (La.App.1937), the insurance policy provided that the insured would receive his one thousand dollar

---

**4.** In *Huber v. Travelers Insurance Co.,* 83 P.L.J. 225 (1935), plaintiff's decedent, an employee of the Ward Baking Company, obtained group insurance, which paid a death benefit of $1,500.00 if the employee became totally and permanently disabled before the age of sixty. Huber became disabled October 1, 1930. The employer continued to pay premiums on the policy until October 8, 1932. The entire policy was then cancelled. Huber died on June 20, 1933 and his widow claimed the $1,500.00 benefit. The court held [in an opinion by Musmanno, J. (later Justice) ] that Huber's rights in the insurance had vested when he became disabled.

While this case is not controlling for us, the language of Judge Musmanno is quite persuasive.

But it would be indeed unfair to permit the defendant to receive premium payments in behalf of a supposed non-insurable and then set up the barrier of non-insurability after the event for which the person is insured happens, namely the permanent and total disability.

The payment of $1500.00 because of a possible permanent and total disability is a decided risk that the insurance company assumed when the policy was issued and the cost for that risk was indubitably included in the premium amount.

*Id.* at 227.

In *Houghton v. American Guaranty Life Insurance Co.,* 692 F.2d 289 (3rd Cir.1982). The Federal Court, applying Pennsylvania law, held that the insurer was required to pay benefits to the insured, after termination of the policy, up to the policy limits of $250,000.00. The insured had expenses resulting from a stroke that had occurred during the time that the policy was in effect.

($1,000.00) life insurance benefit if he became totally and permanently disabled before the age of sixty. He subsequently did become so disabled and the policy was cancelled. In holding for the insured, the court stated, "It remains a fact that his disability arose while the policy was in effect and the subsequent cancellation of the policy would in no wise affect plaintiff's claim thereunder." *Id.* at 871. In *Carter v. Aetna Life Insurance Co.*, 272 Ky. 392, 114 S.W.2d 496 (1938) the court found for the insured. In so doing, the court stated, "To defeat the right to recovery under employee's group policy by cancellation, it must be made before liability has attached". *Id.* at 396, 114 S.W.2d at 498. In *Watts v. Minnesota Mutual Life Insurance Co.*, 240 Ark. 72, 402 S.W.2d 111 (1966), the policy provided that if the insured became totally and permanently disabled he was entitled to the amount of the life insurance benefit. The policy also required that the insured be disabled for a period of at least six months to be determined to be permanently disabled. When the insured became disabled he had to stop working. He subsequently died five months later. His employer terminated his insurance three months after he became disabled, but two months before he died. The court held that the coverage under the employer group life policy had vested upon the occurrence of his disability, as was provided in the policy, and that the fact that the employer cancelled the policy before his death could not deny the payment of this benefit. *See also, Shea v. Aetna Life Insurance Co.*, 292 Mass. 575, 198 N.E. 909 (1935) (company attempted to cancel employee's insurance when he was totally and permanently disabled, but had to give proof after six months). *But see, Blue Cross Blue Shield of Alabama v. Jackson*, 42 Ala.App. 594, 172 So.2d 804 (1965) (coverage denied because notice of cancellation of policy before hospital confinement).

■ Having determined that the appellant's right to benefits vested at the time that he became disabled, we must now address appellee's contention that the right to those benefits was subject to the terms of the policy, more

specifically that portion of the Major Medical Expense Benefits entitled "Coverage after Termination" which states:

If this *insurance terminates for any reason* (other than for non-payment of premium or because of exhaustion of the total benefit after age 65) and on such date of termination you or your dependent are totally disabled and under the care of a physician, *coverage* pertaining fully to the injury or sickness which caused the total disability *will be extended during the uninterrupted continuance of such total disability,* subject to all limitations and provisions of this Major Medical Expense Coverage. Covered Charges which would otherwise be payable for complications of pregnancy should also be paid after termination of insurance provided the pregnancy had its conception prior to the date of termination of insurance. This *extension of insurance* shall *terminate* on the earliest of the following occurrences: (a) the date these *benefits* are replaced by another plan providing similar *benefits* (other than a group policy issued by the Guardian) and under which you or your dependent are a member of clases eligible; (b) the date total disability ends but in no event beyond the last day of the calendar year next following the calendar year in which your *insurance terminated.* (emphasis added) (R. 41a).

■ This provision of the insurance policy plainly states that in the event that the insurance terminates coverage pertaining to total disability will be extended during the uninterrupted continuance of the disability. This was corroborated by the letter sent to appellant which explained the specific items to be covered and the monetary limits of this coverage i.e. $250,000.00. This letter did not inform the appellant of any time limit in which the total amount of these benefits must be paid. The policy then goes on to limit the extent of the insurance to no longer than one year after the insurance terminates. Appellant argues that these provisions do not apply to vested benefits and draws a distinction between "coverage" and "benefits" and "insurance". While there may be a distinction to be made among

these terms, the fact is that the policy seems to have two contradictory provisions. This court has held that, insurance policies are in essence contracts of adhesion, and consequently, any ambiguities or uncertainties in language are construed strictly against the insurer and in favor of coverage. *Ranieli v. Mutual Life Insurance Co. of America*, 271 Pa.Super. 261, 413 A.2d 396 (1979).

In the situation at hand, the appellant had no reason to know that her incompetent husband's benefits would cease prior to his death, the end of his disability, or the extent of the $250,000.00 limit of the Major Medical Coverage. The letter to the appellant did not inform her that in the event that the entire group policy was cancelled, she would no longer be entitled to receive benefits. The terms in the insurance policy termination clause, specifically refer to insurance, but not to the payment of benefits to which she already had acquired a vested right.

Therefore, we hold that appellant is entitled to the balance of the disability benefits and that the termination clause of the policy may not be construed to divest her of this right.

Accordingly, we hold that the judgment in favor of the appellee, Guardian Life is reversed. Judgment entered in favor of the appellant for the balance of the two hundred fifty thousand dollars ($250,000.00) of disability benefits.

PER CURIAM:

AND NOW, this 15th day of August, 1983, the Application of Guardian Life Insurance Company of America Pursuant to Pa.R.A.P. 1732 for Stay of Judgment Pending Appeal is hereby denied. The Opinion Order is hereby clarified to read as follows:

Accordingly, we hold that the judgment in favor of the appellee, Guardian Life, is reversed. Appellant is entitled to have the expenses covered by the disability benefits paid until the Two Hundred Fifty Thousand Dollars ($250,000.00) major medical allowance is exhausted. We remand to the lower court to determine what covered expenses have been

incurred by the appellant for her husband since December 31, 1979. We do not retain jurisdiction.