718 F.2d 994
 114 L.R.R.M. (BNA) 3132, 99 Lab.Cas. P 55,420,
1 Indiv.Empl.Rts.Cas. 293
 Darlene R. WHITE, individually and on behalf of the class,
Plaintiff-Appellant,
v.
I.T.T., a Corporation; International Telephone and
Telegraph Corporation: XYZ Corporation, d/b/a
I.T.T., et al., Defendants-Appellees.
 No. 81-8000.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 31, 1983.
 
 Kenneth L. Funderburk, Phillips & Funderburk, Phenix City, Ala., James D. Patrick, Columbus, Ga., for plaintiff-appellant.
 Dorothy Y. Kirkley, Gloria J. Shanor, Atlanta, Ga., for defendants-appellees.
 Jacob Beil, Columbus, Ga., for Aetna Finance Co.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before TJOFLAT and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 In this diversity action, Darlene White seeks to recover money damages from International Telephone and Telegraph Corporation (ITT), and two of its subsidiary corporations, Aetna Finance Company and XYZ Corporation,[1] for breach of an employment contract and fraud. Before trial, the district court denied White's application to maintain the suit as a class action and dismissed her claims against XYZ Corporation. At trial, the court directed a verdict for ITT at the close of all the evidence and, following a jury verdict against Aetna, entered a judgment notwithstanding the verdict (n.o.v.). In this appeal, White seeks reinstatement of the jury's verdict against Aetna and a new trial against ITT. She also asks us to instruct the district court to reinstate this case as a class action. We affirm the district court's entry of judgment for ITT and Aetna on White's individual claims against them, but remand the case to the district court for further proceedings on White's class action claims.
 
 I.
 
 2
 White was hired by Aetna for its Columbus, Georgia, office in 1975. Soon after White began work, Aetna provided her with a copy of its "Management Manual," which contained Aetna's "Personnel Policies and Benefits." Aetna instructed White to become familiar with these policies and later tested her knowledge of them.
 
 
 3
 Aetna's policy on maternity leave was stated in section M11.063 of the manual. This section provided in pertinent part:
 
 
 4
 A six month Leave of Absence for Maternity purposes will be granted only to those pregnant employees fully intending to work after the birth of their child. A ... Leave of Absence form (see [section] M11.062 for procedures) must be submitted indicating the Maternity Leave.... A pregnant employee may continue working for as long as she desires before delivery and then be granted a leave of absence at the end of which she may return to her old position or another of similar content and pay.
 
 
 5
 Section M11.062 set forth the procedure for obtaining a maternity leave of absence: "All full-time employees requesting an extended Leave of Absence must complete a Request for Leave of Absence...." A sample Request for Leave of Absence form appeared in the manual on the page immediately following the maternity leave section, M11.063. This sample form was filled out as if an employee were requesting maternity leave, and stated:
 
 
 6
 When I return to work at the expiration of my leave of absence, I may return to the position I held prior to this leave of absence or to another position comparable in function and compensation; if an opening then exists. If there are no positions available at the time I am scheduled to return to work, I understand that I will be re-employed in the first position which becomes available for which I am qualified.
 
 
 7
 (emphasis added).
 
 
 8
 In early September 1977, White executed such a Maternity Leave of Absence form, stating that her first day of absence would be September 15, 1977, and that she expected to return to work on March 15, 1978. Three days before White began this leave, Aetna hired a full-time employee to assume her duties. On March 13, 1978, approximately six months after her leave of absence began, White requested reinstatement. She was told that no opening existed, but that she would get the first available job.
 
 
 9
 In September 1978, Aetna created a new position, somewhat comparable to White's former position, in its Columbus office for the express purpose of implementing its affirmative action program. Aetna did not offer White this position; instead, it hired a minority applicant. White learned of Aetna's action in December 1978 and told an Aetna employee that she intended to sue the company for breach of its promise to reinstate her in the next available position. The Aetna employee communicated this statement to management. The position in question subsequently became open, and Aetna offered it to White. She responded to this offer by going to Aetna's Columbus office and demanding to know the terms of the offer. When the office manager informed her that only the regional manager, then out of town, could explain the offer, White became angry, argued loudly with the office manager, and eventually left. She did not pursue the offer, so Aetna, believing she had rejected it, filled the position with a minority applicant.
 
 
 10
 White then brought this class action in the district court, alleging breach of contract and fraud, and seeking individual and class relief. She alleged that ITT so controlled its subsidiary corporations, including Aetna, that ITT and its subsidiaries should be treated as one. White based her breach of contract and fraud claims on Aetna's Management Manual and Leave of Absence form. She alleged that these documents constituted a binding contract of employment which Aetna breached when it refused to reinstate her at the end of her maternity leave. White also alleged that Aetna never intended to honor its commitment to reinstate her and therefore was guilty of fraud. Aetna denied these allegations and, further, contended that if the Management Manual and Leave of Absence form constituted an employment contract, it was a contract of indefinite duration and thus terminable at will.
 
 
 11
 During pretrial discovery, ITT moved for a protective order limiting discovery to ITT, Aetna, and other ITT subsidiaries in the corporate chain between ITT and Aetna. ITT also moved to dismiss White's class action claims. The district court granted both of these motions. Later, at the pretrial conference, the court dismissed with prejudice White's claims against XYZ Corporation.[2]
 
 
 12
 At trial, the court granted ITT's motion for a directed verdict at the close of all the evidence, concluding that White had failed to make out a case against ITT under any of her theories of recovery. The court submitted White's claim against Aetna to the jury, and the jury, in a general verdict, found for White, awarding her $34,055 compensatory damages and $1,000 punitive damages. Aetna moved for judgment n.o.v. contending that it could not be held liable for breach of contract or fraud because White was an employee at will. The court agreed, and granted Aetna's motion.
 
 
 13
 White appeals, contending that the district court erred (1) in granting ITT a directed verdict; (2) in granting Aetna a judgment n.o.v.; (3) in dismissing the class action; and (4) in limiting White's pretrial discovery.[3] We consider these contentions in turn.
 
 II.
 
 14
 White produced no evidence at trial that would have authorized the jury to conclude that she had ever engaged in any contractual dealings with ITT. She offered only a brochure showing Aetna to be "A Nationwide Financial Service of ITT." We will assume for purposes of this appeal, however, that Aetna, with whom White had all her dealings, was indeed ITT's alter ego. Thus, if White had an actionable claim against Aetna for breach of an employment contract or fraud, she also had one against ITT. Conversely, if White had no claim against Aetna, she had none against ITT.
 
 
 15
 We conclude that White had no claim against Aetna for breach of an employment contract because she was an employee terminable at will, to whom Aetna owed no enforceable duty. Under Georgia law, a hiring indefinite as to time is terminable at the will of either party and creates no executory obligations. 34 Ga.Code Sec. 7-1 (1982); Murphine v. Hospital Authority of Floyd County, 151 Ga.App. 722, 261 S.E.2d 457, 458 (1979) (terminable at will employee could not enforce promise to promote according to seniority); Lowe v. Royal Crown Cola Company, 132 Ga.App. 37, 207 S.E.2d 620, 623 (1974). In this case, there is no evidence indicating that White's employment was for a definite duration. Indeed, White herself testified that her employment would continue "[f]or as long as I done my duties like I was supposed to...." Clearly, White was an employee terminable at will. As such, any executory promises arising out of the employment relationship, including a promise to reinstate after maternity leave, were wholly unenforceable. Aetna was therefore entitled to a directed verdict, and thus judgment n.o.v., on White's contract claim.
 
 
 16
 Aetna was also entitled to a directed verdict on White's claim that Aetna's failure to reinstate her amounted to fraud. Under Georgia law, if a promise is unenforceable it cannot form the basis of a fraud claim. See American Standard, Inc. v. Jessee, 150 Ga.App. 663, 258 S.E.2d 240, 244 (1979); Ely v. Stratoflex, Inc., 132 Ga.App. 569, 208 S.E.2d 583, 584-85 (1974). Since we have already determined Aetna's promise to rehire White to be unenforceable under Georgia law, we must also conclude that such promise cannot form the basis of White's fraud claims. Accord, Murphine, 151 Ga.App. 722, 261 S.E.2d 457, 458 (court held employer's unenforceable promise could not form basis of fraud claim).
 
 III.
 
 17
 The district court dismissed, without elaboration, White's class action claims because she failed to satisfy the prerequisites of Fed.R.Civ.P. 23. White contends that the dismissal was error because she adduced sufficient facts to satisfy the prerequisites of Rule 23 or, alternatively, was precluded from doing so because the district court prevented her from discovering such facts.
 
 
 18
 White occupies a procedural posture we[4] have faced on several occasions: a plaintiff brings both an individual and class action; the class action is dismissed pretrial; he loses his individual claim at trial and then appeals the dismissal of his class action. See Walker v. Jim Dandy Co., 638 F.2d 1330, 1335 (5th Cir.1981); Satterwhite v. City of Greenville, 634 F.2d 231 (5th Cir.1981) (en banc); Shepard v. Beaird-Poulan, Inc., 617 F.2d 87 (5th Cir.1980); reh'g granted, 638 F.2d 909 (5th Cir.1981); Armour v. City of Anniston, 597 F.2d 46 (5th Cir.1979), vacated, 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 774 (1980), remanded to district court, 622 F.2d 1226 (5th Cir.1980).
 
 
 19
 On each of these occasions, we have remanded the case to the district court to determine (1) the presence of a live controversy involving the proposed class, and if one is present, (2) whether, pursuant to Rule 23, the action is appropriate for class certification and the appellant is a proper representative of the proposed class (or if not, whether there exists an appropriate class representative who can be substituted for the appellant). We see no reason to deviate from such procedure in this case. We therefore remand this case to the district court for further proceedings on the class issue.
 
 
 20
 AFFIRMED in part and REMANDED in part for further proceedings.
 
 
 
 [1]
 White's complaint alleged that ITT owned numerous subsidiary corporations and that these subsidiary corporations, other than Aetna Finance Company, were being sued as XYZ Corporation. The complaint did not name these XYZ subsidiaries, the record does not otherwise identify them, and none were served with process. Aetna's counsel filed an answer on behalf of "XYZ Corporation" that merely denied the allegations of the complaint
 
 
 [2]
 The court did not indicate the basis for its dismissal of White's claims against XYZ Corporation
 
 
 [3]
 White also contends that the district court erred in restricting her cross-examination of ITT's corporate counsel. The foreclosed examination dealt with two issues: first, the amount of control ITT exercised over Aetna, and second, the extent to which ITT sought to comply with Title VII, 42 U.S.C. Sec. 2000e et seq. (1976). Since we assume, for purposes of this appeal, that Aetna was ITT's alter ego and hold nonetheless that White had no claim against ITT, see Part II of text infra, it is unnecessary for us to examine the district court's rulings concerning ITT's control over Aetna. As for ITT's compliance with Title VII, White's claim of error is frivolous. At the pretrial conference White advised the court that this was not a Title VII case; thus the court correctly foreclosed White's attempt to litigate Title VII at trial
 
 
 [4]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981