John B. GILLESPIE, Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant.

Civ. A. No. 82–824–JLL.

United States District Court, D. Delaware.

Aug. 8, 1984.

---

Henry A. Wise, Jr., Wilmington, Del., for plaintiff.

Frederick H. Altergott and John E. James of Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

In this diversity action,[1] the plaintiff John B. Gillespie ("Gillespie"), seeks a judgment against the defendant, The Equitable Life Assurance Society of the United States ("Equitable"), in the amount of $51,-240.00 plus interest, attorney's fees and punitive damages based upon an alleged employment contract. (Docket Item ["D.I."] 1.) The case is presently before this Court on defendant's motion for summary judgment.

### I. FACTS

For the purposes of this summary judgment motion, the relevant and material facts are not in dispute and may be summarized as follows: In 1953, Gillespie began working at Equitable as a cashier trainee in Columbia, South Carolina. (D.I. 25 at 10.) From 1954 until 1962, Gillespie was an ap-

---

1. Jurisdiction exists by virtue of 28 U.S.C. § 1332 because the plaintiff is a citizen of New Jersey and the defendant is a New York corporation with its principal place of business in New York and the amount in controversy exceeds $10,000 exclusive of interest and costs. (D.I. 1, ¶¶ 1–4.)

praiser in the Mortgage Department in Philadelphia. (*Id.* at 11.) From 1962 until 1965, Gillespie was the northeast regional inspector for Equitable. (*Id.*)

In September, 1965, Gillespie was arrested and charged with the crimes of: (a) Sodomy and Solicitation to Commit Sodomy, in Schuylkill County, Pennsylvania, and (b) Sodomy and Corrupting the Morals of a Minor in Berks County, Pennsylvania. (*See* D.I. 29, Exhibit ["Ex."] A.) Gillespie plead guilty to both charges, resulting in a fine plus prison term.[2]

Gillespie did not inform anyone at Equitable concerning the criminal charges that were brought against him. (D.I. 25 at 30.) Indeed, the management of Equitable only learned of the two pending criminal charges when two detectives, armed with a warrant, went into Equitable's Philadelphia offices to talk to Ferris King, Gillespie's immediate supervisor. (*Id.*)

On September 28, 1965, Ferris King orally informed Gillespie that he would have to cease work with Equitable. (*Id.* at 32.) On September 29, 1965, Ferris King sent a letter to Gillespie informing him that his services with Equitable were "terminated."

(D.I. 25, Ex. 3.) However, on September 30, 1965, King sent another letter to Gillespie which indicated that Gillespie was to be placed on "Leave of Absence Without Pay" effective September 29, 1965.[3] (*Id.* Ex. 2.)

King's decision to place Gillespie on leave of absence was subsequently rescinded by Equitable management in October 1965. In a memorandum to the file dated October 11, 1965, S.R. Hardison, Vice President of the Residential Mortgage Department, stated that a decision had been made to terminate Gillespie effective September 28, 1965.[4] (*Id.* Ex. 4.) This decision apparently was taken in response at least in part to Gillespie's action on October 7, 1965 in which he telephoned King "[a]pparently under the influence of alcohol ..." and threatened that he was going to appeal the action in "this matter" to the president or chairman of the board of Equitable. (*Id.*) In a letter dated October 21, 1965, King informed Gillespie that the *"[e]ffective date of termination* is at the close of Society's business *September 28, 1965."* (*Id.* Ex. 5, emphasis added.) Moreover, in this letter, King informed Gillespie that he should take appropriate steps with respect to the in-

**2.** Gillespie pled guilty to Sodomy and Solicitation to Commit Sodomy on May 6, 1966. He was sentenced to imprisonment of 7 to 14 months and 3 to 6 months (concurrent) plus a fine of $2.00. Gillespie plead guilty to Sodomy and Corrupting the Morals of a Minor on February 11, 1970, and was sentenced to 5 years Special Probation plus a fine of $250.00. (*See* D.I. 29, Ex. A.)

**3.** As the record now stands, there is a factual dispute between the parties on the question of whether or not Gillespie was given a leave of absence or terminated as of September 30, 1965. However, for purposes of Equitable's pending motion for summary judgment *only*, Equitable concedes that Gillespie was first placed on a leave of absence by King's letter of September 30, 1965 (D.I. 29 at 12) but there is no dispute that Gillespie was completely discharged from Equitable's employment effective September 28, 1965 by King's later letter to Gillespie of October 21, 1965. (D.I. 25, Ex. 5.)

**4.** Hardison's memorandum to the file on October 11, 1965, contained the following:

In conversations with Assistant Vice President Floro of the Personnel Department on Mon-

day, October 4th, and Monday, October 11th, it was concluded that in view of the circumstances in Mr. Gillespie's case, he should be dismissed and termination notice issued with the effective date of September 28th.

This conclusion was originally arrived at in our conversation of October 4th. On October 8th Regional Manager King called me stating that Mr. Gillespie had telephoned him on the night of October 7th apparently under the influence of alcohol and made threats that he was going to appeal the action in this matter to either the President, Mr. Keehn, or the Chairman, Mr. Oates, or possibly to both. Following this conversation I attempted to contact Mr. Floro on the 8th but was unable to reach him until today, October 11th.

Our decision for dismissal was predicated on the fact that in view of the nature of the charges against Mr. Gillespie we would not want him to continue as an employee of the Society irrespective of what the court findings might be at some later date. In today's conversation we could find no basis for deferring dismissal any further; hence the dismissal notice is being released to the Personnel Department today, and, at Mr. Floro's suggestion, without memorandum or comment.

(D.I. 25, Ex. 4.)

vestment of his contributions to Equitable's employee pension plan and with respect to the conversion of his group insurance coverages to individual policies. (*Id.*)[5]

Gillespie began serving his prison sentence in May, 1966. He was released from custody in September of 1966. (D.I. 25 at 19.) Upon his release, Gillespie did not return for work with Equitable and did not reapply for a position.[6] In 1971, Gillespie attempted to secure a pardon and an expungement of his criminal record. (*Id.* at 21.) However, for various reasons, the pardon and expungement of the record were not accomplished until April, 1981.

On April 9, 1981, 16 years after he left Equitable, Gillespie contacted John DeWitt of Equitable and requested that he be placed on active duty. (*Id.* Ex. 8.) DeWitt forwarded Gillespie's request to R. Wilkinson, Vice President of Equitable. (*Id.* Ex. 9.) On April 16, 1981, Wilkinson responded in writing to Gillespie:

> As Mr. DeWitt indicated to you, we are no longer involved in Residential Mortgage activity at the Equitable and have curtailed our involvement in both Commercial and Agricultural Mortgage lending with the result that we are not presently expanding our staff. We will keep your request on record in the event that the situation should change in the future.

(D.I. 25, Ex. 10.) In further response to Gillespie by letter dated May 14, 1981, Robert Wilkinson stated that Equitable had reviewed its records concerning Gillespie's employment and found that:

> [y]ou were notified of your dismissal from the Equitable on *October 21, 1965* with an *effective date of termination* established at the close of business on *September 28, 1965.* You received a check for earned vacation days for that year along with the necessary forms for

exercising options relative to the Pension Plan and Group Insurance Coverage. (*Id.* Ex. 12, emphasis added.) Wilkinson reiterated that there were no employment positions at that time and that if Gillespie were to be considered for any future openings it would have to be as a new employee. (*Id.*) Dissatisfied with this response, Gillespie filed this action against Equitable on December 22, 1982.

Gillespie contends that while employed with Equitable he was granted a leave of absence without pay by mutual agreement in September, 1965 when the criminal charges were filed against him. He further contends that after he was granted a pardon and his criminal records were expunged in 1981 and reapplied with Equitable on April 9, 1982 for employment, he was wrongfully refused reemployment in violation of that mutual agreement. (D.I. 1.)

## II. DISCUSSION

### A. *Choice of Law*

■ The first issue is to determine the law applicable to this case. Because jurisdiction is based on diversity of citizenship, the Court is required to apply Delaware's conflict of laws rules. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ Where substantive issues of interpretation of a contract are involved, the Delaware courts have more recently utilized the modern and flexible "most significant relationship to the transaction" test set forth in the Restatement (Second) of Conflict of Laws § 188(1). *Oliver B. Cannon and Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160 (Del.1978). *See Hill v. Equitable Trust Co.*, 562 F.Supp. 1324 (D.Del.

---

5. King's letter to Gillespie dated October 21, 1965, stated in pertinent part: "Attached hereto is check representing your earned vacation from September 28th through October 19th, or a total of 15 days. *Effective date of termination* is at the close of Society's business *September 28, 1965.*" (D.I. 25, Ex. 5, emphasis added.)

6. Gillespie testified that he was under the impression that he was on a leave of absence and that he could not come back until "this matter was cleared up." (D.I. 25 at 62.) However, Gillespie also testified that he did not know whether Equitable had a policy of not hiring former employees or other persons who had criminal records. (D.I. 25 at 20.)

1983); *Process and Storage Vessels, Inc. v. Tank Service, Inc.*, 541 F.Supp. 725 (D.Del. 1982); *Sellon v. General Motors Corp.*, 521 F.Supp. 978 (D.Del.1981). In applying this principle the Court must consider: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(2). Because Gillespie was employed by Equitable in Pennsylvania and because all of the actions relevant to the agreement between Equitable and Gillespie concerning the leave of absence and his discharge occurred in Pennsylvania, the law of Pennsylvania governs this case.

## B. *Gillespie—Employee At Will*

■ Under Pennsylvania law, there is a presumption that an employee serves at the pleasure of the employer and that the relationship may be terminated by either party for good cause or no cause and at any time absent a specific term or duration. *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 84 A.2d 323 (1951). *See also Rogers v. International Business Machines Corp.*, 500 F.Supp. 867 (W.D.Pa.1980); *Beidler v. W.R. Grace, Inc.*, 461 F.Supp. 1013 (E.D. Pa.1978), *aff'd*, 609 F.2d 500 (3d Cir.1979).

■ The only limitation on an employer's power to discharge an employee who occupies an at will position is when the termination violates some "clear mandate of public policy." *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir.1979) (employee, who is discharged by employer for refusal to take polygraph test contrary to the Pennsylvania statute forbidding employers to require polygraph test as condition for, or continuation of, employment, has a cause of action for wrongful discharge); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119, 121 (1978) (em-

ployee, who was discharged for responding to a notice for jury service, has a cause of action against his employer because the discharge violates a clear mandate of public policy.)

■ First, Gillespie has failed to demonstrate that his employment with Equitable was for a definite term or was one other than at will. Indeed, the undisputed facts clearly indicate that Gillespie's employment relationship was one at will which could be terminated by either party at any time. Moreover, there is no dispute that Gillespie's employment was terminated on October 21, 1965, effective September 28, 1965, despite the fact that Gillespie was earlier notified on September 30, 1965 that he was placed on a leave of absence without pay.

Second, Gillespie has failed to demonstrate that Equitable's discharge of Gillespie on October 21, 1965 was in violation of some "clear mandate of public policy." Although Gillespie states in his brief in the summary of argument that "[i]t was contrary to public policy to terminate the plaintiff's employment on the grounds that he had been arrested where there was no conviction," there is no further reference to this in his brief and he cites no Pennsylvania statute or court decision to this effect.

Consequently, there is no merit to Gillespie's claim that he was wrongfully discharged under Pennsylvania law so as to give him a valid cause of action against Equitable.[7]

## C. *Leave of Absence—No Limit on Equitable's Right To Terminate Gillespie's Employment*

■ In an employment at will situation, the employer's right to terminate an employee for good cause or no cause is not abrogated by the employer's prior decision to grant the employee a leave of absence.

However, the facts of this case present a situation not often addressed by the courts in Pennsylvania. In *Brown v. Carnegie-Il-*

---

7. The only authorities that Gillespie cites to support his position are two dissenting opinions in *Geary v. United States Steel Corp.*, 456 Pa. 171, 174, 319 A.2d 174 (1974) and *Bruffet v. Warren*

*Communications, Inc.*, 692 F.2d 910, 921 (3d Cir.1982). These dissenting opinions carry absolutely no weight as precedent. *See Marino v. Bowers*, 657 F.2d 1363 (3d Cir.1981).

linois Steel Corp., 168 Pa.Super. 380, 77 A.2d 655 (1951), aff'd, 368 Pa. 166, 81 A.2d 562 (1951), the plaintiff had sued his employer and the employer's group life insurer for the improper termination of his group life insurance while he was on a leave of absence due to disability. The court found no liability against either defendant, since the employer had the right to terminate the employment relationship at any time because of the at will nature of the employment, a right that was not reduced by the employer's decision to retain the plaintiff as an employee for two years despite his absence because of disability. Thus, the employer incurred no liability by discharging an at will employee who was on a disability leave of absence at the time.

■ The parties have failed to point out and the Court has found no other Pennsylvania cases bearing on the merits of the position currently advanced by Gillespie. However, after a review of the rationale of the Brown decision and decisions of other jurisdictions dealing with comparable situations, the Court concludes that Equitable's right to terminate Gillespie as an employee was not affected by his change in status from active to leave of absence.

In White v. I.T.T., 718 F.2d 994 (11th Cir.1983), cert. denied, — U.S. —, 104 S.Ct. 1914, 80 L.Ed.2d 462 (1984), the plaintiff argued that her employer had breached an alleged contractual agreement to rehire her after she was granted a six month maternity leave of absence. The plaintiff had complied with her employer's regulations governing leave of absences for pregnancy, regulations which stated that the employer would reemploy a woman who had taken a maternity leave of absence if there were a position available at the time of her return. When the plaintiff sought to return to work after six months, however, there was no position open for her. 718 F.2d at 996.

The employer's principal defense to the plaintiff's subsequent claim for breach of contract and fraud was that the plaintiff had no employment contract and therefore, notwithstanding the leave of absence granted to her, the employer could terminate her employment or refuse to rehire her at any time and for any reason. The court, in applying Georgia law, stated:

> We conclude that White had no claim against Aetna for breach of an employment contract because she was an employee terminable at will, to whom Aetna owed no enforceable duty. Under Georgia law, a hiring indefinite as to time is terminable at will of either party and creates no executory obligations. 34 Ga. Code § 7–1 (1982); Murphine v. Hospital Authority of Floyd County, 151 Ga. App. 722, 261 S.E.2d 457, 458 (1979) (terminable at will employee could not enforce promise to promote according to seniority); Lowe v. Royal Crown Cola Company, 132 Ga.App. 37, 207 S.E.2d 620, 623 (1974).

718 F.2d at 997. The same reasoning was employed by the Supreme Court of Minnesota in rejecting the claim of an at will employee/plaintiff in Cederstrand v. Lutheran Brotherhood, 263 Minn. 520, 117 N.W.2d 213 (1962). The plaintiff, an employee with the defendant company for 32 years, requested and was given a six month leave of absence without pay. At the expiration of the six months' time, after the plaintiff refused to accept a lower paying position with her employer, she was terminated. The plaintiff sued her employer, contending that she had an employment contract that permitted her discharge only for cause. Id. 117 N.W.2d at 215–217.

After reviewing the relationship between the plaintiff and her employer and the employer's general hiring practices, the court concluded that she was employed at will and that the employer had no obligation to reemploy her after the leave of absence.

Following the rationale of these decisions, it is clear that Equitable's right to terminate on October 21, 1965 the employment of Gillespie effective September 28, 1965, based on the at will relationship was not restricted by any prior notice of a leave of absence granted to Gillespie. Because Equitable's right to terminate Gillespie's employment grew out of the at will employ-

ment agreement, Gillespie's argument that the grant of the leave of absence did limit Equitable's right to terminate his employment is without merit.

Accordingly, on the undisputed facts of this case, the Court, as a matter of law, will grant Equitable's motion for summary judgment and an order will be so entered.