597 F.2d 46
 19 Fair Empl.Prac.Cas. 1761,
20 Empl. Prac. Dec. P 30,022
Ida Vene ARMOUR, Plaintiff-Appellant,
v.
CITY OF ANNISTON, d/b/a Anniston Memorial Hospital, and
Northeast Alabama Regional Medical Center Board,
Defendants-Appellees.
 No. 77-1778.
 United States Court of Appeals,
Fifth Circuit.
 June 13, 1979.
 
 Edward Still, Susan W. Reeves, Birmingham, Ala., for plaintiff-appellant.
 Walter J. Merrill, Anniston, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before MORGAN, FAY and RUBIN, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 Ida Armour appeals from an adverse judgment on her Title VII[1] claims. She argues that the evidence was insufficient for the court as finder of fact to conclude that her discharge was justified. In addition, she complains that the trial judge erred in denying her motion for a class action certification. We affirm.
 
 
 2
 We briefly iterate the facts insofar as they demonstrate that the trial judge's factual determinations were not clearly erroneous, Fed.R.Civ.P. 52(a). Mrs. Armour, a black female, became a nurse's aide at Anniston Memorial Hospital (the Hospital) on March 16, 1966. On January 13, 1972 she was granted a leave of absence to enter the Hospital as a patient for treatment of a back problem. During this stay, Mrs. Armour and Mrs. Mildred Laney, a white registered nurse who had previously supervised Mrs. Armour, argued over Mrs. Armour's use of a radio at 2:30 A.M. Concerned that Mrs. Armour's midnight interlude might not facilitate the sleep of Mrs. Armour's 82 year old roommate who was scheduled for surgery in the morning, Mrs. Laney demurred. She later reported the incident to the Director of Nursing and a summary was placed in Mrs. Armour's file.
 
 
 3
 Due to the radio incident, relations between Mrs. Laney and Mrs. Armour were not cordial. Consequently, Mrs. Armour was removed from Mrs. Laney's shift. Her position on her former shift was then filled. Upon her return to work, Mrs. Armour was assigned to the second shift in the pediatric unit. She worked in this unit for five days prior to February 20, 1972. On February 20, 1972, Mrs. Armour reported for work and left a short time later. The parties' stories differ on the crucial question of the circumstances of Mrs. Armour's departure that day. The Hospital presented witnesses who testified that Mrs. Armour said she was leaving because she did not like to work with babies, who could not communicate their ailments. Mrs. Armour asserts that her reason was that she had no one to care for her own child while she worked. She testified that she was excused from work on February 20th for this reason. On the next day, Mrs. Armour called the Hospital to say that she could not work because she had no baby sitter. Yet she admitted to attending a meeting without her child during the time for which she was scheduled to work. Under her employment contract, Mrs. Armour was subject to termination for leaving or not appearing for work without permission.
 
 
 4
 On February 22, 1972, Mrs. Armour filed complaints with the Civil Service Board concerning the radio incident and the shift assignment. She also requested a leave of absence. The Hospital responded to the charge and also reported that Mrs. Armour left work without permission because she refused to work in pediatrics. The Hospital requested that Mrs. Armour be terminated. The Civil Service Board denied Mrs. Armour's request and approved the Hospital's request for authority to terminate her.
 
 
 5
 On June 7, 1972, Mrs. Armour filed a complaint with the Equal Employment Opportunity Commission, alleging racial discrimination as the cause of her discharge. A copy of the complaint was served on the Hospital on May 10, 1974. A determination of "reasonable cause" was made by the Commission on September 16, 1974, and a notice of her right to institute a civil action was sent to Mrs. Armour on September 24, 1975. Thereafter, she filed this lawsuit. In her complaint, she asserted that her dismissal was a result of her race and of a request made by her in 1966 that black as well as white employees be referred to by courtesy titles. She requested back pay, reinstatement, a declaratory judgment and an injunction against future discrimination. On June 8, 1976, she amended her complaint to include a class action. On July 22, 1976, the court held a hearing and refused to certify the class.
 
 
 6
 A final judgment was entered against Mrs. Armour individually on March 8, 1977. The trial judge held alternatively that Mrs. Armour had failed to establish a prima facie case of Title VII discrimination[2] and that, even if she had, the Hospital had proved that her discharge was prompted not by race, but by her failure to report to work.
 
 I. THE INDIVIDUAL CLAIM
 
 7
 We uphold the trial court's decision that the Hospital was justified in discharging Mrs. Armour. The trial court was presented with conflicting evidence regarding the circumstances surrounding Mrs. Armour's absence from work and the Hospital's reasons for terminating her. Mrs. Armour testified that she left work and remained absent due to her inability to obtain a baby sitter. The Hospital presented witnesses who specifically refuted these facts and denied that Mrs. Armour had been excused from work on account of her responsibilities at home. Likewise, Mrs. Armour presented circumstantial evidence that her termination was racially motivated and the Hospital presented evidence that she was terminated for her failure to report for work. It is not our province on appeal to make the credibility choices necessary to decide this case. We are satisfied that there was ample evidence upon which the court could have made its finding. Constrained as we are by the clearly erroneous standard of Rule 52, we must uphold the trial court's acceptance of the Hospital's version of the facts surrounding Mrs. Armour's absence from work and its reasons for discharging her.
 
 II. THE CLASS ACTION
 
 8
 In addition to her individual claim, Mrs. Armour moved for the certification of a class consisting of all former and present black employees and applicants for employment at the Anniston Memorial Hospital and its successor entity, the Northeast Alabama Regional Medical Center.[3] The trial court conducted a hearing and thereafter declined to certify the class. We need not assess the correctness of the court's decision, since we hold that, in view of our affirmance of the dismissal of Mrs. Armour's individual claim, she lacks the nexus necessary to represent the class of discriminatees. Davis v. Roadway Express, Inc., 590 F.2d 140 (1979); Camper v. Calumet Petrochemicals, Inc., 584 F.2d 70 (5th Cir. 1978) (per curiam); Satterwhite v. City of Greenville, 578 F.2d 987 (5th Cir. 1978) (en banc), Petition for cert. filed, 47 U.S.L.W. 3465 (Jan. 9, 1979).
 
 
 9
 The question here is whether an individual can represent a class after the dismissal of her individual claim has been affirmed on appeal where the trial court has held a class certification hearing and incorrectly[4] refused to certify the class. In East Texas Motor Freight v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the Supreme Court held that it was error to certify a class after its representative was found not to have a nexus with the class due to an adverse ruling on his individual claims. Following Rodriguez, in Satterwhite we affirmed the improper[5] refusal to certify a class where the class representative was found at trial and on appeal to have no nexus to the class due to the lack of merit of her individual claim. In neither Rodriguez nor Satterwhite did the plaintiff move for a class certification hearing, and none was held. Finally, in Davis we held that Rodriguez controls where the trial court initially certified a class, but after a hearing decertified it; the representative could not represent the class under Fed.R.Civ.P. 23(a)(4) since, by the time the denial of the class certification was reviewed on appeal, it was clear that the representative had no individual cause of action.
 
 
 10
 Although Satterwhite noted in dictum that the absence of a class certification hearing at trial might make a difference in deciding whether to allow as a class representative an individual whose own claim had already been adjudicated against him,[6] Davis recognized that, even where a class certification hearing has been held, a critical inquiry is whether the individual continued to have a nexus with the class sufficient to pass muster under Rule 23(a)(3). This is nothing more than saying that a class representative must meet All the criteria of Rule 23(a). Among those criteria are the separate requirements that the representative be able adequately to represent the class and that she have claims typical of the other class members. Although we have no other reason to question Mrs. Armour's ability adequately to represent the class, we nonetheless deny her the right to represent the class, since both a nexus with the class and adequacy of representation are necessary ingredients under Rule 23(a).
 
 
 11
 On the facts of this case, "including the facts developed at the trial of the plaintiffs' individual claims,"[7] Mrs. Armour has no claim in common with the other putative class members. She herself admitted that she has not been a victim of discrimination in hiring or pay. At this point in the litigation it is also clear that Mrs. Armour has not been the victim of racial discrimination in her termination. Having suffered no discrimination at the hands of the defendants, Mrs. Armour is prevented by Rule 23 from representing this class.
 
 
 12
 Here, as in Satterwhite,[8] there is no reason to expect hardship to befall putative and unknown class members. No one has come forward to join the class or to intervene on appeal. No one has been bound by Mrs. Armour's attempt to establish a class. Finally, the same considerations applicable to the statute of limitations question in Satterwhite apply here.
 
 
 13
 Accordingly, we AFFIRM the trial court's findings as to Mrs. Armour's individual claim and AFFIRM the refusal to certify the class.
 
 
 14
 Affirmed.
 
 
 15
 ALVIN B. RUBIN, Circuit Judge, dissenting in part:
 
 
 16
 I concur in Part I of the opinion. I respectfully dissent from Part II of the court's opinion affirming the trial court's refusal to certify the case as a class action.
 
 
 17
 When a plaintiff who has filed suit individually and as the representative of a class loses her individual case, her capacity to act as a representative is not ipso facto terminated. If this were the result, there would be little reason for a trial court ever to certify a class expeditiously. The short shrift procedure would be to sever the representative's personal claims and try them: if she succeeds, class action questions can be dealt with later; if she fails, the troublesome class action is swiftly dispatched.
 
 
 18
 Rule 23(c)(1), Federal Rules of Civil Procedure, mandates that class action certification be considered at the outset of a suit: "As soon as practicable." For many reasons, the appropriateness of class action proceedings must be dealt with at the start of a suit: to give due process notice to class members in 23(b)(3) actions that require such notice; to enable both plaintiffs and defendants properly to prepare for the trial by way of discovery and other procedures; to enable putative (b)(2) or (b)(3) class members to know whether or not the running of the statute of limitations on their individual (b)(2) or (b)(3) claims has been interrupted; and to determine whether the named plaintiffs are qualified to represent the class. See generally 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1785 (1972).
 
 
 19
 If a plaintiff who appears as a class representative fails to press for class action certification, later is adjudged to have no personal claim, and this adjudication results in her loss of any potential nexus with the class, we have refused to remand the action for consideration of certification as of the time when that issue should originally have been considered. E. g., Satterwhite v. City of Greenville, 5 Cir. en banc 1978, 578 F.2d 987, Cert. applied for, 1979, 47 U.S.L.W. 3465.
 
 
 20
 In Satterwhite, a female applicant for employment filed a class action "on behalf of all present and prospective female employees of the city." Id. at 990. Once the court determined that she had no grounds for her individual claim of sex discrimination in hiring, it then considered whether she had the requisite nexus with even a part of the putative class. The lack of any identity of interest with female employees or discharged employees, together with the plaintiff's own lack of diligence in pursuing the class action claims and the procedural problems of Nunc pro tunc determinations caused us to find neither the requisite nexus between Mrs. Satterwhite and the present and prospective female employees of the city that had never hired her nor any other adequate reason to remand for a belated class hearing. My brethren observe that in Satterwhite we noted in dictum that the absence of a class certification hearing might make a difference in deciding whether to allow a person to act as a class representative after her own claim had been decided adversely to her. That "dictum" was, however, a part of the rationale by which the decision was reached. The vigorous dissent did not differ as to this. See id. at 1001. (Godbold, J., dissenting). I am unable to consider this expression smoke in the judicial wind.
 
 
 21
 Mrs. Armour is black and female, and she had been a hospital employee. She originally sought to represent a class composed of "all black former and present employees and applicants for employment" at the hospital. "Nexus" with a class does not depend on the merit of the class representative's personal claim; it requires a sufficient stake in the outcome to establish that the representative is still acting as a class member and not merely as a volunteer or crusader. See id. at 992, 993-94 n.8 and 996. Despite the adjudication of her individual claim, Mrs. Armour still had an identity of interest with at least part of the putative class to assure her stake in the outcome. She pressed for a class certification hearing, the trial judge held one, and I think incorrectly, refused to certify the class. My brethren decline even to review that decision, thus making it conclusive. Despite my full respect for the intellect and diligence of federal district judges in general, and for the ability of the trial judge in this case in particular, I do not think that their rulings in such matters should be beyond appellate scrutiny.
 
 
 22
 If there is doubt that Mrs. Armour can adequately represent the class, that question should be determined after an evidentiary hearing in the trial court. Here, unlike Satterwhite, we do not know the size of the proposed class, whether or not its members are aware of the suit or what statute of limitations problems lurk in the background. It may be that Mrs. Armour lacks a claim in common with all of the members of the class she initially sought to represent, but in Title VII actions brought by class representatives who had at one time been employees, we have frequently confirmed class certification on behalf of broadly defined classes including persons not yet hired at the time this suit was filed. E. g., Watkins v. Scott Paper Co., 5 Cir. 1976, 530 F.2d 1159, 1164 & n.1, Cert. denied, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139; Pettway v. American Cast Iron Pipe Co., 5 Cir. 1974, 494 F.2d 211, 217. If the plaintiff sought to represent a class defined too widely, the trial court might, after an adequate hearing, certify a different class. I would reverse the denial of class action certification, remand for a hearing concerning the appropriate class and Mrs. Armour's ability to represent that class and for further class action proceedings.
 
 
 
 [1]
 42 U.S.C. § 2000e Et seq. (1976)
 
 
 [2]
 The trial judge construed Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), a section 1983 discrimination case, to require proof of discriminatory intent in Title VII cases as well. Mrs. Armour argues that the court committed reversible error on this point. We do not reach the question, however, because even if Mrs. Armour had established a prima facie case, it would have foundered under the court's alternative finding that her dismissal was justified. We therefore hold only that the trial court was not clearly erroneous in finding that the Hospital had carried its burden of proof in showing that the discharge was not a product of discrimination. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 362, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)
 
 
 [3]
 After Mrs. Armour's termination, the city of Anniston turned over the ownership and direction of the hospital to the newly established Regional Medical Center Board and changed its name to the Northeast Alabama Regional Medical Center
 
 
 [4]
 We assume, although we do not decide, that the trial court's decision was incorrect
 
 
 [5]
 In Satterwhite, the court assumed, arguendo, that the trial court materially erred by failing to hold a class certification hearing. 578 F.2d at 993 and n. 7. Compare King v. Gulf Oil Co., 581 F.2d 1184 (5th Cir. 1978) (no prejudice shown)
 
 
 [6]
 578 F.2d at 995 n. 10. Footnote 10 notes that whether the representative moves for a certification hearing bears on his ability adequately to represent the class. This proposition stems from Rodriguez, where the Court considered adequacy of representation as a factor, in addition to nexus, in determining whether the representative met Rule 23(a) criteria
 
 
 [7]
 431 U.S. at 406 n. 12, 97 S.Ct. at 1898. It is clear that the trial court did not violate the rule that a trial court should not consider the merits of the class representative's claim in order to determine whether a class should be certified. Huff v. N. D. Cass Company of Alabama, 485 F.2d 710 (5th Cir. 1973) (en banc). Indeed the court repeatedly cautioned Mrs. Armour's counsel that he should not present at the certification hearing any evidence which was relevant only to the merits of the case
 
 
 [8]
 578 F.2d at 996-97