**David McNIERNEY, Plaintiff,**

v.

**McGRAW–HILL, INC., Defendant.**

Civil Action No. MJG–94–2844.

United States District Court,
D. Maryland.

Nov. 7, 1995.

Richard P. Neuworth and Steven G. Warm, Office of Richard Neuworth, Baltimore, Maryland, for Plaintiff.

Andrea R. Calem and Frank C. Morris, Jr., Epstein, Becker & Green, Washington, DC, for Defendant.

GARBIS, District Judge.

The Court has before it Plaintiff's Motion for Partial Summary Judgment on His Equal Pay Act Claim, Defendant's Motion For Summary Judgment and the materials submitted by the parties relating thereto. The Court finds that a hearing is unnecessary to resolve the motions.

## I. FACTUAL BACKGROUND

In April of 1994, Defendant McGraw–Hill began to fill a vacancy for a "Rights Correspondent" for Europe, the Middle East and Africa in the International Rights Department.[1] Lesley Roxin ("Ms. Roxin") the Department Manager and Patrick Hansard ("Mr. Hansard"), the Director of International Rights and Marketing[2], interviewed Ms. Evonne Inglesh ("Ms. Inglesh") for the vacant position. Ms. Inglesh was a practicing attorney licensed in both Illinois and New York. As an attorney, she had earned a salary in excess of $50,000 per year. While Ms. Inglesh would have been a good choice in view of her legal background and language skills[3], the fact that she would be taking a substantial cut in pay raised doubts as to her "staying power" so she was not then hired.

In May of 1994, Plaintiff David McNierney ("McNierney") of Baltimore applied for the

---

1. The position involves marketing the rights to McGraw–Hill publications to foreign publishing houses and negotiating contracts for translation rights.

2. Ms. Roxin reports directly to Mr. Hansard.

3. She spoke French and Greek.

still open position. He was interviewed on June 6 by Ms. Roxin and Mr. Hansard. McNierney was told that, if hired, he would have to move to New York and start work by June 29.[4] Ms. Roxin informed McNierney that McGraw–Hill would *not* pay the expenses of relocation to New York.

On June 14, Ms. Roxin telephoned McNierney and offered him the position as Rights Correspondent for a salary of $35,000. That same day, Ms. Roxin called McNierney back to inform him that she had made a mistake and that the salary for the position was $33,000. On June 15, 1995, McNierney accepted the $33,000 offer without attempting to negotiate for a higher salary.

Upon McNierney's acceptance, Roxin sent identical rejection letters to all other candidates, including Ms. Inglesh, advising them that they would be considered when future positions became open.

McNierney says that he was told by someone at McGraw–Hill to call the Travel and Relocation Department ("T & R Department") regarding his relocation. He did so and spoke with Mona Jageman ("Ms. Jageman") asking for names of real estate agencies that could help him locate an apartment in New York City. According to McNierney,[5] Jageman volunteered that McGraw–Hill knew of some and that "the company often paid for the trip, lease brokerage fees, and moving expenses for new buyers ... [as well as] temporary housing." McNierney did not inform Jageman that Ms. Roxin, his supervisor, had expressly told him that the company would not pay his relocation expenses. Nor did McNierney call Ms. Roxin or take any action to clear up the situation. McNierney then traveled to New York to search for an apartment. McNierney paid for all of his expenses including his transportation and his hotel accommodations.

Ms. Jageman spoke with her supervisor, Jim Angeloni ("Mr. Angeloni") and Ms. Roxin and told them that McNierney had represented to her that the company was paying to relocate him to New York. Whether or not it is a fact that McNierney had made a misrepresentation regarding the reimbursement of his relocation expenses, it is undisputed that Ms. Roxin was informed that this had occurred. Operating on her understanding of McNierney's actions, Ms. Roxin asked Mr. Hansard what to do. Mr. Hansard, considering advice from Mr. Angeloni as to company policy, decided to rescind McNierney's employment offer.

On June 27, 1994, Ms. Roxin advised McNierney that his employment offer was being rescinded for misrepresentation. On that same day McGraw–Hill paid McNierney $1,226.94 to reimburse him for the expenses of apartment searching in New York.

After McNierney's employment offer was rescinded, Ms. Roxin contacted some of the applicants who had been interviewed but not selected the first time around, including Ms. Inglesh. Ms. Inglesh met with Ms. Roxin again, was offered the job at a $33,000 salary, negotiated for a higher salary and was employed at $35,000. On June 30, 1994 she was hired with her start deferred to July 19 in order to allow for reasonable notice to her current employer.

Plaintiff presents the following claims:

1. That he was a victim of gender discrimination.

2. That McGraw–Hill violated the Equal Pay Act by setting his salary at $33,000 instead of the $35,000 which it agreed to pay Ms. Inglesh.

3. That McGraw–Hill made tortious misrepresentations by offering him employment although there was no intent to hire him.

## II. *LEGAL STANDARD*

■ Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted only if the pleadings and supporting documents "show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

---

**4.** Ms. Roxin was taking maternity leave at the end of July and wished to familiarize the new employee with the office before she left.

**5.** Jageman's different version of this telephone call is, necessarily, disregarded for summary judgment purposes.

56(c). Addressing the analysis a trial court should use in considering a motion for summary judgment, the Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Fourth Circuit has reiterated that "[f]ailure of proof of an essential element of the case 'necessarily renders all other facts immaterial.'" *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991) (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552).

■ On a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Thus, the Court must view the evidence in the light most favorable to the non-moving party.

■ Rule 56, however, does not relieve the non-movant of all responsibility to rebut the motion. In an ordinary civil case, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. As Judge Winter said in *Bland v. Norfolk and Southern Railroad Company*, 406 F.2d 863, 866 (4th Cir.1969):

> While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, *i.e.*, any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

*See also Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (noting "the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial") (quoting *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553).

## III. DISCUSSION

### A. Gender Discrimination Claim

The essence of McNierney's gender discrimination claim appears to be that Ms. Roxin didn't wish to hire him due to his gender, was required by her supervisor (Mr. Hansard) to offer him the job, but developed a scheme to prevent his acceptance of the position.

#### 1. The McDonnell Douglas Proof Scheme

■ McNierney, who cannot establish the alleged discrimination by direct evidence, can utilize the approach recognized in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and reaffirmed in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

> It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.

*Id.*, 450 U.S. at 254–55, 101 S.Ct. at 1094 (footnotes omitted).

■ If the defendant carries this burden of production, the presumption raised by the *prima facie* case is dropped, and the factual inquiry "proceeds to a new level of specificity." *Id.* The burden now shifts back to the plaintiff and

> merges with the [plaintiff's] ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination. [Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely

motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine,* 450 U.S. at 254–255, 101 S.Ct. at 1094–95.

■ The ultimate burden of persuading the fact-finder that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

### 2. Application To This Case

■ The Court will assume without deciding that McNierney, even though a male,[6] has established a *prima facie* case. In response, McGraw–Hill has articulated a legitimate, non-discriminatory purpose for its decision to rescind his employment. That is, McGraw–Hill has stated that it acted because the decision makers, Ms. Roxin and Mr. Hansard believed that McNierney had made a misrepresentation to Ms. Jageman regarding his ability to obtain reimbursement for his relocation expenses.

In view of McGraw–Hill's articulation of a legitimate, non-discriminatory, reason for the action at issue, McNierney must show that the articulated reason is pretextual and must carry the ultimate burden of proving that his employment was rescinded due to gender discrimination.

■ On the evidence before the Court, no reasonable fact finder could find McGraw–Hill's articulated reason to be pretextual. The evidence establishes, beyond reasonable debate, that the decision makers (Ms. Roxin and Mr. Hansard) were informed by Ms. Jageman that McNierney misrepresented facts in order to seek an unauthorized reimbursement of relocation benefits. There is nothing on which to base a conclusion that Ms. Roxin and Mr. Hansard did not believe Ms. Jageman or that they were not reason-

ably justified in believing it. Nor is there any basis upon which a reasonable fact finder could conclude that McGraw–Hill, and in particular Ms. Roxin and Mr. Hansard, acted unreasonably in deciding to rescind McNierney's employment in light of the situation. There was a reasonable business judgment made to avoid getting started with McNierney as an employee. Title VII was not created to allow the courts to "second guess" the wisdom of an employer's judgment. *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 245 (4th Cir.1982). This Court shall not question the imminently reasonable business judgment exercised by Ms. Roxin and Mr. Hansard.

McNierney contends that Ms. Jageman made a false report of his conversation with her. While Ms. Jageman presents a different version, McNierney's story will be assumed to be true. Even so, McNierney's problem is with Ms. Jageman, the alleged false reporter, and not with the employment decision makers who reasonably relied on Ms. Jageman's report. There is no evidence to indicate that Ms. Jageman's allegedly false report was caused by gender bias on her part. Indeed, on the evidence, there could (at the very most) have been a misunderstanding on Ms. Jageman's part as to the meaning of what McNierney said to her.

McNierney seeks to avoid summary judgment by raising numerous arguments, no one of which, nor even the entirety combined, is sufficient to establish a genuine issue of material fact as to the existence of a discriminatory motive for the subject employment action.

McNierney does not even suggest that McGraw–Hill had any overall discriminatory pattern or practice. He contends, instead, that Ms. Roxin personally was biased against male employees. The sole evidence[7] he presents in this regard is the fact that Ms. Roxin never hired any male other than him.

---

**6.** But see *Rachelson v. Secretary, U.S. DHHS.,* 834 F.Supp. 879, 886 (D.Md.1993), *aff'd* 42 F.3d 1386 (4th Cir.1994) in which Judge Legg of this court held that a male plaintiff could not establish a prima facie case of gender discrimination, under the *McDonnell Douglas* framework, because as a male he was not a member of a disadvantaged class.

**7.** McNierney's conclusory statements of opinion, for example that Ms. Roxin would be uncomfortable working with a male, are not competent evidence.

However, Ms. Roxin was hiring manager for only 2 positions prior to the selection at issue. For one of these, (assistant secretary) there were only female applicants so the fact that she hired a female is of little moment. In the other situation, Ms. Roxin chose a female for a Rights Correspondent position from an applicant pool of 4 females and 2 males. Ms. Roxin's historical hiring record does not present a scintilla of evidence (if that much) of gender bias.

McNierney alleges that Ms. Roxin made a "sex-based comment" when she referred to her maternity leave as the reason for a June 29 employment commencement date. The statement which, of course, indicated Ms. Roxin's gender was a perfectly proper expression of the reason why a June 29 starting date was needed. It is preposterous to suggest that Ms. Roxin's reference to the fact of her pregnancy is evidence of gender bias on her part.

McNierney asserts that Roxin "stalled" in making the offer in order to prevent him from moving to New York in time to start on June 29. The evidence establishes no basis for a "stall" contention. McNierney was interviewed on Monday, June 6 and was told he'd be contacted by Friday, June 10. The business day after June 10, Monday, June 13, McNierney called Roxin and was told (correctly) that the decision had not yet been made. The next day, Tuesday, June 14, the offer of employment was made to him. There is no evidence at all of stalling in making the June 14 offer to McNierney.

McNierney further raises a smoke screen of assertions to try to create an issue of fact as to Ms. Roxin's motivation. Not one of these, nor all together, raise even a justified inference of gender bias. McNierney opines that gender bias caused such things as: (1) an alleged 2 day delay in sending employee paperwork, (2) the use of a Baltimore address rather than a New York address, (3) an initial error in stating the salary to be $35,-000 rather than $33,000, etc. McNierney's opinions are not evidence and the actual evidence does not lend any substantial weight to

McNierney's case. The Court need not, and will not, discuss further assertions presented by McNierney that are unsupported by the record and/or patently frivolous.

McNierney attempts to find evidence of gender bias in the fact that his salary was to be $33,000 while Ms. Inglesh was paid $35,-000. However, there is every valid reason for paying Ms. Inglesh, who had just been employed as a $50,000 per year attorney, a salary of $35,000. Moreover, the evidence established that McNierney's starting salary would have been higher than the starting salary of similarly selected female Rights Correspondents.[8]

The bottom line is that no reasonable fact finder, even giving McNierney the benefit of every reasonable inference from his version of the evidence, could find that McGraw–Hill took the employment action at issue for a discriminatory motive. The Defendant is entitled to summary judgment on the gender bias claim.

### B. *Equal Pay Act Claim*

■ McNierney presents a claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (1988) ("EPA"). This statute provides that:

> No employer having employees ... shall discriminate ... between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs which require equal skill, effort and responsibility and which are performed under similar work conditions, except where such payment is made pursuant to a ... (iv) a differential based on any other factor other than sex ...

*Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 343 (4th Cir.1994) (quoting 29 U.S.C. § 206(d)(1)). Under the EPA, a plaintiff may make [his] prima facie case by comparing [his] salary to that of [his] predecessor or successor. 29 C.F.R. § 1620.13(b)(2).

---

8. Ms. Velten started at $31,500 in March of 1994 and Ms. Cheng (Velten's predecessor) earned

$28,000.

McNierney alleges that McGraw–Hill has violated this statute "by paying Plaintiff's female successor [Ms. Inglesh], a higher salary for the same position requiring equal skill, effort and responsibility, even though she was less competent than Plaintiff." (Amended Complaint at ¶ 41). As mentioned earlier, McNierney accepted the Rights Correspondent position for a salary of $33,000 while Ms. Inglesh later accepted the position for a salary of $35,000. The Equal Pay claim doesn't clear the first hurdle because McNierney never worked for McGraw–Hill.

The EPA addresses *actually* paying different wages to similarly situated employees. It does not appear to apply to potential employees. The statute's interpretive regulations underscore this point. Economic reality rather than technical concepts determine whether there is employment within the meaning of the EPA. 29 C.F.R. § 1620.8 (1994). To "employ" within the meaning of the EPA means "to suffer or permit to work." 29 C.F.R. § 1620.8. The definition of "equal work" requires the employer to "knowingly [let] the employee to perform the equal work." 29 C.F.R. § 1620.13.

Inasmuch as McNierney never performed any services as a McGraw–Hill employee, he received no "renumeration for employment" even though he was reimbursed for some of his travel expenses.[9] The bottom line is that McNierney never got any compensation for services rendered to McGraw–Hill that can even be compared to what Ms. Inglesh was paid for the same services. In brief, there was no work, much less equal work, so there was not even a need for equal pay.

■ Even if McNierney had performed services for McGraw–Hill and had been paid at the $33,000 rate rather than a $35,000 rate, he would still not avoid summary judgment. On the evidence, McNierney presents no reasonable basis to find that Ms. Inglesh, coming from a $50,000 job, was paid $2,000 more per year because she was a woman and not a man. Indeed, the undisputed evidence is that Ms. Inglesh got the same $33,000 salary offer as McNierney. The difference is that McNierney accepted the $33,000 while

Ms. Inglesh did not, she negotiated and received an extra $2,000.

### C. *Misrepresentation Claims*

McNierney's misrepresentation claims are based on the premise that Ms. Roxin did not intend for McNierney to have the job when she offered it to him. (Amended Complaint ¶¶ 43–45). Therefore, the allegedly actionable misrepresentations are Ms. Roxin's initial offer to McNierney on June 14, 1995 and Ms. Roxin's statements that he would have the job after McNierney accepted on June 15, 1995. These statements can be viewed as statements of intent to have McNierney come to work for McGraw–Hill.

### 1. Intentional Misrepresentation Claim

■ To establish an intentional misrepresentation claim, McNierney must prove:

(1) that the representation made was false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but also had a right to rely upon it . . .; and that (5) he actually suffered damage directly resulting from such fraudulent misrepresentation.

*Miller v. Fairchild Industries, Inc.,* 97 Md. App. 324, 629 A.2d 1293, 1302 (1993). McNierney fails as to each of the first four elements.

#### a. Falsity

There is no evidence from which a fact finder could conclude that McGraw–Hill did not intend to have McNierney come to work when the statements at issue were made. The fact that, later, the intention changed is not evidence that the statement of intent was untrue when made.

McNierney's arguments, to the extent they are at all supported by the record, consist of

---

9. *See* 29 C.F.R. § 1620.10.

a list of Ms. Roxin's alleged errors [10], his opinions as to Ms. Roxin's behavior [11], the aforementioned "stalling" allegations, the above discussed reliance on Ms. Jageman's misrepresentation report, McGraw–Hill's failure to offer him assistance to move to New York, and Ms. Roxin's telling Ms. Inglesh (albeit in the identical rejection letter sent to all other applicants) that she would be given consideration for future positions when they arose. McNierney's "evidence" does not, even standing unrefuted, create a genuine issue of material fact. Furthermore, there is overwhelming evidence establishing that the intent to hire McNierney changed only because of the relocation expense problem discussed above. McNierney was understood to be coming to work for McGraw–Hill on an established starting date, Ms. Roxin sent rejection letters to all the applicants (including Ms. Inglesh) which would likely lead them to seek employment elsewhere, etc. The bottom line is that no fact finder could find that the statements at issue were false.

### b. Intent And Purpose To Defraud

It follows from the fact that the statements at issue were true that there was no intentional misrepresentation and there was no purpose to defraud McNierney.

### c. Reliance

Had there been an intentional false statement of intent to employ McNierney with a purpose to defraud, it would be necessary to consider whether McNierney had a right to rely upon the statement.

Here, when McNierney accepted McGraw–Hill's offer on June 15, the parties established an "at-will" employment relationship. That is they entered into a contract of employment with no specified duration. It is well established that "an employment contract of indefinite duration, that is, at-will, can be legally terminated at the pleasure of either party at any time." *Adler v. American Std. Corp.*, 830 F.2d 1303, 1305 (4th Cir.1987). Because, McNierney's employment could be terminated "at the pleasure of either party at any time" he was not justified in relying on McGraw–Hill's statement of intent to hire him. *Adler v. American Std. Corp.*, 538 F.Supp. 572, 581 (D.Md.1982), *aff'd* in part, *rev'd* in part 830 F.2d 1303 (4th Cir.1987) (questioning whether plaintiff would ever be able to prove fraud and rely to his detriment in an at-will situation, except in situations such as discrimination or abusive discharge etc.); *White v. I.T.T.*, 718 F.2d 994, 997 (11th Cir.1983) (per curiam), *cert. denied* 466 U.S. 938, 104 S.Ct. 1914, 80 L.Ed.2d 462 (1984) (court interpreting analogous Georgia at-will doctrine stated that failure to reinstate employee after she returned from maternity leave could not be actionable as fraud since promise was unenforceable because employment was at-will); *Sneed v. American Bank Stationary Company*, 764 F.Supp. 65, 68 (W.D.Va.1991) (interpreting Virginia's analogous at-will doctrine and stating that plaintiff's reliance on the defendant's representations was not reasonable because the underlying employment contract, being terminable at will, is unenforceable).[12]

McNierney suggests that the Maryland Court of Appeals decision in *Weisman v. Connors*, 312 Md. 428, 540 A.2d 783 (1988) [13], holds that an at-will employee can reasonably rely on an employer's statements and maintain a cause of action for intentional misrepresentation. This contention is completely unjustified.

---

**10.** Sending him the job description for a similar position relating to Asia and not the correct one, failing to send him an annual report, etc.

**11.** *I.e.*, that she met his acceptance of the employment offer with "dead silence" and that she took notes at Ms. Inglesh's interview and not his.

**12.** This Court is aware that Maryland courts allow a "public policy" exception to the at-will doctrine. In certain situations, such as a claim for abusive discharge, an at-will employee would be allowed to state a cause of action "when the

motivation for the discharge contravenes some clear mandate of public policy." *Adler v. American Std. Corp.*, 291 Md. 31, 432 A.2d 464, 473 (1981). This Court, as discussed *supra*, has found that McNierney has not stated a valid claim under Title VII for gender discrimination or the EPA and therefore the "public policy" exception does not apply.

**13.** In *Weisman*, a former Ford Motor Company executive was induced to leave Ford by the owner of a holding company whose principal component was a major Toyota distributorship.

First, *Weisman* was a *negligent* misrepresentation case, not an *intentional* misrepresentation case. Second, the Maryland Court of Appeals in *Weisman* did *not,* as claimed by McNierney, "[hold] that all employers held a delegable duty to all employees whether or not those employees were considered at-will or not to use both due care and make truthful statements about employee relationships." (Plaintiff's Opposition at 21). Third, and most importantly, the employee in Weisman was *not an at-will employee.* The *Weisman* decision reflects that the "terms of the [offer] letter were incorporated into a *three year employment contract*" which was executed by both parties. *Weisman,* 540 A.2d at 785. Because the employee in *Weisman* had a fixed term of employment, he was not an at-will employee. Therefore, McNierney's argument that *Weisman* has altered the relationship between the reliance element of intentional misrepresentation and at-will employees is devoid of merit.

For the reasons stated herein, McNierney has not asserted a valid claim of intentional misrepresentation.

### 2. *Negligent Misrepresentation Claim*

McNierney's negligent misrepresentation argument is based upon the same statements as his intentional misrepresentation argument.

In Maryland, the elements of the tort of negligent misrepresentation are:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Weisman v. Connors,* 312 Md. 428, 540 A.2d 783, 791 (1988) (citations omitted).

As discussed above, the statements in question were not false. Therefore, no further discussion is needed.

It is appropriate to note that even if there had been a false statement it is very doubtful that McGraw–Hill (*i.e.,* Ms. Roxin) owed a duty of care to McNierney. McNierney asserts that Ms. Roxin "owed a duty of care to [him] to advise him that she wanted a female for the position that he was being offered employment [sic], and that she did not want to hire him." (Amended Complaint at ¶ 59). However, this conclusory statement does not begin to address the very significant duty of care issue. *See Martin Marietta v. International Telecommunications Satellite Org.,* 991 F.2d 94, 98 (4th Cir.1992) (*reversing on other grounds* 763 F.Supp. 1327 (D.Md. 1991)). In *Martin Marietta,* the Fourth Circuit approved the district court's holding that where parties have established a contractual relationship special circumstances are required to add tort duties of care to those duties imposed by their contract. Such duties of care have been imposed for the benefit of patients vis-a-vis physicians and clients vis-a-vis lawyers, etc. It is by no means certain that such duties would be imposed in the context of an at-will employment relationship.

In sum, Defendant is entitled to summary judgment on the negligent misrepresentation claim.

## IV. *CONCLUSION*

For the foregoing reasons:

1. Plaintiff's Motion For Partial Summary Judgment on His Equal Pay Act Claim is **DENIED.**

2. Defendant's Motion For Summary Judgment is **GRANTED.**

3. Judgment for Defendant shall be entered by separate Order.